**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 3 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN FURFAY WALKER,

Defendant-Appellant.

No. 97-4030

---

Appeal from United States District Court
for the District of Utah
(D.C. No. 96-CR-00163-J)

---

Randy S. Ludlow, of Salt Lake City, Utah, for the appellant.

Bruce C. Lubeck, Assistant United States Attorney (Scott M. Matheson, Jr.,
United States Attorney, with him on the brief), Salt Lake City, Utah, for the
appellee.

---

Before BRORBY, McKAY, and BRISCOE, Circuit Judges.

---

BRISCOE, Circuit Judge.

---

Defendant John F. Walker appeals his conviction of one count of

kidnaping, in violation of 18 U.S.C. § 1201. We exercise jurisdiction pursuant to

28 U.S.C. § 1291 and affirm.

## I.

On or about July 19, 1996, Walker commenced a relationship with a woman named Jolene Dilley. Dilley was with Walker in his room at the Regal Inn in Salt Lake City on the morning of July 25, 1996, and after sleeping for a short time, Dilley told Walker she was leaving to see her children. Walker told her she could not leave and repeatedly pulled her back when she attempted to go to the bathroom to change clothes. Walker pulled Dilley onto the bed, straddled her with her arms pinned under his knees, and began choking her with his hand, saying "You're the worst kind of girl there is." Record II at 86. Dilley struggled and was able to push Walker off of her. After Dilley refused to tell Walker she loved him, he grabbed a beer bottle, smashed it on the end of a table, and told her he was going to kill himself. Walker then threatened to kill Dilley if she did not tell him she loved him. He used a name tag from work to scratch a "J" on his wrist and said, "See, this proves I love you." Id. at 91. Ultimately, Walker told Dilley: "What you have to do in order for me not to kill you is go with me in your car for 12 hours out and 12 hours back, a total of 24 hours, to give me time to talk you into staying with me. In that time if you don't change your mind, then I'll let you go." Id. at 92-93. Fearing for her life, Dilley agreed to go with Walker. Before they left, Dilley consumed two or three beers and two

-2-

prescription Xanax tablets.  She testified at trial that she drank the beers and took the Xanax because she "didn't want to feel the pain if he tried to kill [her]."  Id. at 97.

Walker told Gilley to put on her clothes, but not her shoes and socks.  He demanded her car keys and her credit cards.  Walker loaded the car with some of his clothing and personal items, placed Dilley in the passenger seat, and drove toward Idaho.  Dilley fell asleep approximately ten minutes after they left the motel and when she awoke, she saw a sign that said, "Welcome to Idaho."  Id. at 104.  Walker pulled off the interstate and drove to a desolate spot on a country road so that Dilley could go to the bathroom.  Later, he stopped to get gas at a Chevron station and told Dilley if she behaved, he would take her home, but if she tried to get out of the car, he would kill her.  After fueling the car, Walker continued driving northward.  Walker again told Dilley, "You're the worst kind of girl there could be."  Id. at 118.  She asked what he meant and said, "You're not going to take me back, are you?"  He said:  "No, and not only that, but I'm going to tear your fucking heart out like you did to mine."  Id.  Dilley then attempted to grab the steering wheel and car keys.  Walker punched her in the side of her face.  She kicked the gear shift and the car stopped.  Dilley unfastened her seat belt, opened her door, and started running and waving at cars on the highway.  Several cars stopped and Walker drove away.  Dilley was taken to the local hospital for

-3-

treatment and Walker was later arrested.

II.

*Statutory vagueness*

The statute under which Walker was charged, 18 U.S.C. § 1201, provides in pertinent part: "Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when (1) the person is willfully transported in interstate . . . commerce . . . shall be punished by imprisonment for any term of years or for life." Walker contends the portion of the statute that refers to holding the victim "for ransom or reward or otherwise" is unconstitutionally vague. According to Walker, there is no way he could have known his conduct violated the "or otherwise" purpose of the statute, particularly since he did not seek a ransom or reward for Dilley. Although Walker makes reference in his appellate brief to his filing of a motion to dismiss, this motion was asserted at the close of the government's evidence and counsel argued only that the evidence presented by the government was insufficient to establish the elements of the crime charged. Walker did not assert that the statute was unconstitutionally vague. Because Walker did not present this issue to the trial court, we review for plain error. See Fed. R. Crim. P. 52(b).

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand

-4-

what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). In determining whether a statute is unconstitutionally vague, our inquiry focuses on whether the statute at issue provides a defendant with notice or "fair warning" that the conduct contemplated is forbidden by law. See United States v. Protex Indus., Inc., 874 F.2d 740, 743 (10th Cir. 1989). Where, as here, a vagueness challenge does not implicate First Amendment values, the challenge "cannot be aimed at the statute on its face but must be limited to the application of the statute to the particular conduct charged." United States v. Reed, 114 F.3d 1067, 1070 (10th Cir. 1997). Accordingly, the challenge must be "based only on the facts as they emerge at trial." Id.

Prior to 1934, the Federal Kidnaping Act was applicable only if the captive was held for ransom or reward. See United States v. Healy, 376 U.S. 75, 81 (1964). Congress amended the wording of the Act in 1934 to encompass persons held "for ransom or reward or otherwise." Id. In Gooch v. United States, 297 U.S. 124, 128 (1936), the Supreme Court interpreted the "or otherwise" amendment to encompass any benefit which a captor might attempt to receive for himself. Subsequently, in Healy, the Court held the Act is not limited to kidnapings for an ultimately illegal purpose. 376 U.S. at 82 ("we find no compelling correlation between the propriety of the ultimate purpose sought to be

-5-

furthered by a kidnaping and the undesirability of the act of kidnaping itself").

Since Gooch and Healy, at least five circuits, including our own, have rejected vagueness challenges to the "or otherwise" portion of § 1201. See United States v. Marcano-Garcia, 622 F.2d 12, 15-16 (1st Cir. 1980); United States v. Vickers, 578 F.2d 1057, 1058 (5th Cir. 1978); United States v. Cassidy, 571 F.2d 534, 536 (10th Cir. 1978); United States v. Cavallaro, 553 F.2d 300, 303-04 (2d Cir. 1977); Daulton v. United States, 474 F.2d 1248, 1248-49 (6th Cir. 1973). No circuit has found the "or otherwise" language unconstitutionally vague.

After reviewing the facts that emerged at trial in this case, we conclude Walker had fair notice that the conduct of which he was charged was unlawful. The statute sufficiently apprised him that forcing another person, particularly one he had only known for a few days, to accompany him from Utah to Idaho, under threat of violence, was unlawful. The fact that he did not seek a ransom or reward is irrelevant and unnecessary. The facts presented at trial indicate Walker's actions were motivated by self interest, i.e., his interest in convincing Dilley to remain in a relationship with him. Such conduct is clearly proscribed by § 1201(a).[1]

_____

[1] In his appellate brief, Walker suggests he was unable to prepare a defense to rebut the charge against him. To the extent he is purporting to challenge the sufficiency of the indictment, we reject his argument. The indictment specifically stated that "[o]n or

(continued...)

-6-

*Sufficiency of evidence*

Walker contends the evidence presented at trial was insufficient to support his kidnaping conviction. Sufficiency of evidence is a question of law subject to de novo review. United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). Evidence is sufficient to support a conviction if the evidence and the reasonable inferences drawn therefrom, viewed in the light most favorable to the government, would allow a reasonable jury to find defendant guilty beyond a reasonable doubt. Id. We have repeatedly noted the limited and deferential nature of appellate review of sufficiency of evidence claims and have indicated we will not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict. See, e.g., United States v. Chavez-Palacios, 30 F.3d 1290, 1293 (10th Cir. 1994); United States v. Hoenscheidt, 7 F.3d 1528, 1530 (10th Cir. 1993).

There are no Tenth Circuit cases specifically outlining the essential

---

[1](...continued)

about the 25th day of July, 1996, . . . defendant . . . did knowingly and unlawfully seize, kidnap, abduct, and carry away, and did wilfully transport in interstate commerce from Utah to Idaho, Jolene Dilley against her will for a purpose to benefit defendant; all in violation of 18 U.S.C. § 1201(a)." Appellant's Brief, Addendum A. We conclude this language sufficiently apprised Walker of the charge against him and allowed him to prepare a defense to the charge. See United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997) (indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense). We also note that at no time prior to trial did Walker request a bill of particulars, or otherwise contend he did not understand the charge against him.

elements of the crime of kidnaping under § 1201. Although there are slight variations among the other circuits as to the essential elements of the crime, it is generally agreed the elements include (1) transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom, reward, or otherwise, (4) with such acts being done knowingly and willfully. United States v. Lewis, 115 F.3d 1531, 1535 (11th Cir. 1997), cert. denied, 118 S. Ct. 733 (1998); see also United States v. Sriyuth, 98 F.3d 739, 751 n.20 (3d Cir. 1996) (describing three elements to be proven--victim knowingly and willfully seized (i.e., forcibly held or carried away against will), victim held for some benefit or reason, and victim transported in interstate commerce while so seized), cert. denied, 117 S. Ct. 1016 (1997); United States v. Osborn, 68 F.3d 94, 100 (5th Cir. 1995) (listing four elements of proof--transportation in interstate commerce, unconsenting victim, demand of ransom, reward, or otherwise, and acts done knowingly and willingly); United States v. Childress, 26 F.3d 498, 501-03 (4th Cir. 1994) (focusing discussion on elements of nonconsent of victim and willfulness of defendant's acts to obtain ransom or other benefit); United States v. Davis, 19 F.3d 166, 169 (5th Cir. 1994) (enumerating four elements and citing United States v. Jackson, 978 F.2d 903, 910 (5th Cir. 1992)).

Viewing the evidence in this case in the light most favorable to the government, we conclude there is more than enough evidence to satisfy the

essential elements of the crime of kidnaping. As recounted above, Dilley testified at trial that Walker attempted to choke her and verbally threatened to kill her in his room in Salt Lake City. He then demanded that she accompany him for twenty-four hours to try to convince her to stay with him and told her he would not kill her if she did so. Dilley accompanied Walker in the car as he drove from Salt Lake City to Idaho because she feared for her life. This evidence, taken together, indicates: (1) Walker transported Dilley from Utah to Idaho; (2) Dilley did not willingly consent to accompany Walker but did so because she feared for her life; (3) Walker transported Dilley to receive a benefit for himself, i.e., to convince her to remain in a relationship with him; and (4) Walker performed the acts knowingly and willfully. Although Walker attacks Dilley's credibility, the jury clearly chose to believe her story, and we conclude there was sufficient evidence to allow the jury to do so.

The judgment of the district court is AFFIRMED.