**F I L E D**

**UNITED STATES COURT OF APPEALS**

**JUN 9 1998**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEYON THOMAS,

    Defendant - Appellant.

No. 96-1458
(D. Ct. No. 96-CR-48-AJ)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **LUCERO**, and **MURPHY**, Circuit Judges.

Defendant Deyon Thomas was tried before a jury and convicted of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); and using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). He was sentenced to approximately 26 years in prison. Defendant now appeals his convictions and sentencing. We exercise jurisdiction under 18 U.S.C. §§ 1291 and 3742(a), and

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

affirm.

## BACKGROUND

On January 10, 1996, a Denver drug task force used Christopher Epperson, a government informant with drug charges pending against him, to make a controlled buy of cocaine base (or crack cocaine) at a suspected crack house at 3102 Columbine. When Epperson knocked and rang the doorbell, defendant Deyon Thomas opened the door, holding a gun in his left hand. Epperson testified that the weapon appeared to be a black steel .45 caliber gun.[1] As Epperson entered the house, Thomas moved the gun behind his back, but Epperson did not see exactly what he did with it. The drug transaction took about ten minutes, during which time Epperson paid Thomas $240 in exchange for drugs, later confirmed to be crack cocaine. Epperson testified that Will Harper, Thomas's half-brother, also was in the room while the transaction was conducted.

Shortly after the controlled buy, officers obtained and executed a search warrant for the house. The police used a crowbar to open the screen door and a ninety-pound ram to break down the front door. The first officer to enter the residence saw Thomas move quickly out of sight. After pursuing Thomas, the officer found Thomas on his back on the floor with his hands in the air begging

---

[1]During a subsequent search of the premises, the police recovered a gun from the defendant. The gun recovered was a chrome nine millimeter handgun rather than a black .45. We will discuss this apparent conflict in the evidence in more detail below.

- 2 -

the officer not to shoot him. Another officer found a nine millimeter handgun on the floor near where the defendant was lying down. During the search of the house, the officers also found various caches of crack cocaine hidden about the house, as well as a scale of the sort typically used by drug dealers to measure out quantities of drugs. A search of Thomas's person revealed $1,735 in cash hidden in his socks.

Thomas and Harper were both arrested. While they were in the police car, Harper made statements to Thomas that the dope found in the house belonged to Thomas and that Harper himself was not involved. During initial questioning by officers at the scene, Thomas stated that he was house sitting for a friend and that the gun the officers found had always been there, as long as he had been there. He stated that he had been burglarized recently, that he grabbed the gun when he heard people forcibly entering the house because he thought they might be burglars, and that he then dropped it upon hearing the officers yelled "police." Upon further questioning at the police station, however, he stated that a man named Kevin had supplied him with a ticket to Denver, given him fifteen ounces of crack cocaine to sell, given him a gun and a customer list, and allowed him to use the residence at 3201 Columbine for dealing the drugs. Prior to both periods of questioning, Thomas signed forms acknowledging that he had been informed of his rights.

Thomas contests his convictions and sentencing on a variety of grounds. First, he argues that there was insufficient evidence that he used or carried a firearm during and in relation to a drug offense as required by 18 U.S.C. § 924(c)(1). Second, he contends that the trial court should not have allowed Harper's hearsay statement to be introduced into evidence as an excited utterance. Third, he argues that the government failed to prove the substance involved was crack cocaine, and thus he should have been sentenced for powder cocaine rather than for crack. Fourth, he claims that the sentencing guidelines regarding crack cocaine are unconstitutional. Finally, he asserts that the trial judge should have recused himself before sentencing. For the reasons set forth below, we affirm.

## DISCUSSION

1.     <u>Sufficiency of the Evidence for the Section 924(c) Conviction</u>

The defendant first argues that the evidence was insufficient to support a finding that he used or carried a firearm during and in relation to a drug trafficking crime as required by 18 U.S.C. § 924(c). We review the record de novo to determine whether there is sufficient evidence to support the jury's verdict. <u>See</u>, <u>e.g.</u>, <u>United States v. Wilson</u>, 107 F.3d 774, 778 (10th Cir. 1997). Evidence is sufficient to support a conviction if a reasonable jury, considering the evidence and the inferences to be drawn therefrom in the light most favorable to the government, could find the defendant guilty beyond a reasonable doubt. <u>See</u>

id. In evaluating the evidence under this standard, the court will not question a jury's credibility determinations or its conclusions about the weight of the evidence. See United States v. Johnson, 57 F.3d 968, 971 (10th Cir. 1995).

Section 924(c) imposes a mandatory five-year sentence on a defendant who "uses or carries" a firearm "during and in relation to" a drug trafficking crime. 18 U.S.C. § 924(c)(1).[2] In the context of section 924(c), "use" means "active employment" of the firearm by the defendant, which includes brandishing or displaying the firearm. Bailey v. United States, 516 U.S. 137, 143, 148 (1995). The term "carry" involves two elements: "'possession of the weapon through the exercise of dominion or control; and transportation of the weapon.'" United States v. Spring, 80 F.3d 1450, 1465 (10th Cir.), cert. denied, 117 S. Ct. 385 (1996) (quoting United States v. Martinez, 912 F.2d 419, 420 (10th Cir. 1990)). The evidence here was sufficient to support a finding that the defendant both used and carried a weapon during and in relation to the drug trafficking crime.

It was undisputed at trial that Thomas was displaying a gun when he came to the door. There was evidence before the jury that the primary purpose of the house, and Thomas's presence there, was to run a crack cocaine sales operation.

---

[2] Many defendants recently have challenged their convictions in light of Bailey v. United States, 516 U.S. 137 (1995), which addressed the meaning of the "use" prong of section 924(c). However, Thomas's trial was held after Bailey was decided and he does not challenge the "use" instructions given to the jury in his case.

A government witness testified that drug dealers often carried firearms to protect themselves, the drugs, and the drug proceeds against rival distributors and against individuals who might come to the "crack house" seeking to steal rather than purchase the drugs. A reasonable inference from all this evidence was that the defendant displayed the weapon because he expected the call to be for a drug transaction, and that he wanted to deter the caller from attempting to harm him or steal the drugs or the proceeds. Although Thomas claimed that he carried the weapon because he feared burglars, the jury was free to reject that assertion; we will not review the jury's credibility determinations. See Johnson, 57 F.3d at 971. The evidence is sufficient to allow a reasonable jury to find that, by displaying the weapon at the door, the defendant used the weapon during and in relation to a drug transaction.

The evidence also is sufficient for a reasonable jury to find that Thomas carried the weapon during and in relation to the drug transaction. Although Epperson could not see exactly what Thomas did with the weapon when he put it behind his back, a reasonable inference is that he placed it in the back of his waistband and was carrying it throughout the drug transaction. There was a sufficient evidentiary basis, therefore, for a reasonable jury to find that the defendant violated section 924(c).

In making his sufficiency-of-the-evidence argument, the defendant notes

the discrepancy in the evidence relating to the gun.  Epperson testified that Thomas arrived at the door with a black steel .45, while the actual gun found near the defendant during the police search of the premises was a chrome (silver) nine millimeter.  There are several ways in which a reasonable juror might resolve this evidentiary discrepancy in favor of the government.  For instance, a juror might believe that Thomas brought the nine millimeter to the door to meet Epperson, and that Epperson mistakenly recollected the gun as a black .45.  Because a reasonable juror could resolve the conflict in favor of the government, the discrepancy does not make the evidence insufficient to support the defendant's conviction for violating section 924(c).

2.    Admission of Harper's "Excited Utterance"

The defendant argues that the statements made by his half-brother, Harper, who did not testify at trial, should not have been allowed into evidence because they were inadmissible hearsay.  See FED. R. EVID. 802.  The district court allowed the government to introduce the statements under Federal Rule of Evidence 803(2), which permits the introduction of "excited utterances" as an exception to the hearsay rule.  An "excited utterance" is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  FED. R. EVID. 803(2).  The district court found that Harper's statements fell within the excited utterance

exception to the hearsay rule because they were made while he was still under the stress of the police breaking into the house and arresting him.

We review the district court's evidentiary rulings for abuse of discretion. See United States v. Trujillo, 136 F.3d 1388, 1395 (10th Cir.), petition for cert. filed, (U.S. May 5, 1998) (No. 97-8977). "Because hearsay determinations are particularly fact and case specific," our review of those decisions is especially deferential. Id. Thomas contends that the statements were not sufficiently close in time to the "startling event" (i.e., the officers breaking into the house) to fall within the scope of Rule 803(2). However, there is no bright-line rule restricting the amount of time that can pass between a startling event and an excited utterance; the key factor is whether the declarant is still under the stress of the startling event. See FED. R. EVID. 803(2) (containing no time element); FED. R. EVID. 803(2) advisory committee's note; United States v. Farley, 992 F.2d 1122, 1126 (10th Cir. 1993). Here, the district court found that the officers' entry into the house with a battering ram was a startling event. The court determined that Harper was still very upset and had not fully recovered from that event at the time he made the statements. The district court did not abuse its discretion in admitting Harper's statements under Rule 803(2).

Thomas also contends that admitting Harper's hearsay statements violated

his Sixth Amendment right to confront witnesses against him.[3]  A trial court should allow the admission of a hearsay statement against a criminal defendant "only if it bears adequate 'indicia of reliability.'" Ohio v. Roberts, 448 U.S. 56, 66 (1980).  "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." Id.  We have previously held that the "excited utterance" exception embodied in Rule 803(2) is a "firmly rooted" exception to the hearsay rule.  See United States v. Jackson, 88 F.3d 845, 847 (10th Cir. 1996) (citing White v. Illinois, 502 U.S. 346, 355 n.8 (1992)).  Thus, the admission of Harper's excited utterances under Rule 803(2) did not violate Harper's Sixth Amendment right of confrontation.

Thomas argues that Harper's statements were not reliable because they tended to exculpate Harper and incriminate Thomas.  Cf. Lee v. Illinois, 476 U.S. 530, 541 (1986) (noting that "when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect").  However, because the hearsay statements at issue here fall within a firmly rooted exception to the hearsay rule, the court properly inferred that the statements were sufficiently reliable to be admitted.  See Roberts, 44 U.S. at 66.  Therefore, the district court did not err in stating that

_____

[3] The hearsay rule and the confrontation clause address similar concerns.  They are not, however, identical rules.  See, e.g., FED. R. EVID. Article VIII advisory committee notes.  Therefore, we analyze the two issues separately.

the exculpatory nature of Harper's statements would go only to the weight to be given them by the jury.

3.     Sentencing for Crack Cocaine

Thomas contends that he should have been sentenced for powder cocaine rather than for crack cocaine (which carries a heavier penalty) because the government failed to prove that the substance involved was crack cocaine. Because he did not raise this issue at trial, we review only for plain error.  See United States v. Walker, 137 F.3d 1217, 1219 (10th Cir. 1998) (citing FED. R. CRIM. P. 52(b)).

We find no error here.  Two forensic scientists testified for the government that the substance Epperson bought was crack cocaine.  The defendant offered no evidence to rebut that testimony.  The district court did not commit plain error in sentencing for crack cocaine.

4.     Constitutionality of Sentencing Guidelines' Disparate Treatment of Crack and Powder Cocaine

Next, Thomas asserts that the disparity in the sentencing provisions for crack cocaine and powder cocaine is unconstitutional.  See U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2D1.1(c) (drug table) (1995[4]) (treating one

---

[4] As a general rule, we refer to the version of the guidelines that was in effect at the time of the defendant's sentencing.  See United States v. Moudy, 132 F.3d 618, 620 n.1 (10th Cir.), cert. denied, 118 S. Ct. 1334 (1998).

gram of crack as equivalent of 100 grams of powder cocaine for sentencing purposes). Thomas argues that the harsher penalties for crack cocaine disproportionately affect black defendants in violation of the Constitution. Although the defendant does not cite to a specific provision of the Constitution, we assume he intends to bring his argument under the Equal Protection and Due Process clauses of the Fourteenth Amendment, as have other defendants. See, e.g., United States v. Ashley, 26 F.3d 1008, 1013 (10th Cir. 1994).

Thomas failed to raise this issue below, so we review for plain error. See Walker, 137 F.3d at 1219. We have repeatedly rejected claims that section 2D1.1(c) violates the constitutional guarantees of equal protection and due process. See, e.g., Ashley, 26 F.3d at 1013; United States v. Thurmond, 7 F.3d 947, 950-53 (10th Cir. 1993). Thus, we reject Thomas's attack on the constitutionality of section 2D1.1.

5.     Recusal

Finally, the defendant argues that the district court judge should have recused himself from sentencing. Specifically, Thomas argues that certain comments made by the judge to the jury after they returned their verdict demonstrated the judge's bias against the defendant. Thomas filed a motion for recusal after those comments, which the district court denied. We review the denial of that motion for abuse of discretion. See Cauthon v. Rogers, 116 F.3d

1334, 1336 (10th Cir. 1997).

The district court judge made the following comments to the jury:

This trial has really involved you through a large picture window view of a sad part of our society, one that has many, many victims and one that involves enormous cost, not the least of which is simply the trial that we went through and the investigation and the effort and production of the people here in court to provide their testimony, and the fact that we have this . . . illegal industry, the scourge on the public that is traveling across this country where drugs are -- illegal drugs are imported and sold on the street.

R.O.A. vol. 8 at 8.

"Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The court must ask "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (citation and internal quotation marks omitted). We agree with the district court and the government that the statements quoted above amount to no more than what "Congress was saying to all of us when it passed these [drug] laws," R.O.A. vol 9 at 19 (comments of district court at sentencing)—i.e., that drug use and drug dealing are significant problems in the United States. These statements do not demonstrate partiality. The district court did not abuse its discretion in denying the motion to recuse.

## CONCLUSION

For the reasons stated above, we AFFIRM the jury's verdict and the sentence imposed upon the defendant.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge