**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PRESLEY EARL HOOD,

    Defendant-Appellant.

No. 04-6259
(Western District of Oklahoma)
(D.C. No. CR-03-126-A)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **LUCERO**, and **MURPHY**, Circuit Judges.

After examining the briefs and the appellate record, this panel has

determined unanimously to grant the parties' request for a decision on the briefs

without oral argument.  Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  This case is,

therefore, ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. INTRODUCTION

Following a jury trial, defendant-appellant Presley Earl Hood was convicted of one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and five counts of aggravated sexual abuse of a child under the age of twelve, in violation of 18 U.S.C. § 2241(c). The district court sentenced Hood to life in prison. On appeal, Hood challenges his convictions and his sentence, arguing (1) the district court erroneously instructed the jury on the issue of consent as a defense to kidnapping, (2) the evidence was insufficient to support his convictions, (3) the district court erred in denying Hood's motion for a new trial, and (4) his sentence must be vacated in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court **affirms** Hood's convictions and sentence.

## II. BACKGROUND

At the time of the relevant events, Hood, aged fifty-six, lived in Hollister, Missouri and worked in nearby Branson, Missouri. He first met the victim,[1] ten-year-old Jane Doe, on February 15, 2003, at a birthday party for his young son

---

[1]To protect the identity of the minor victim, this opinion will refer to her as Jane Doe.

who lived near Doe. Doe lived with her mother and her siblings in Stillwater, Oklahoma.

After the birthday party, Doe accompanied Hood and two of his children to Branson. Thereafter, Doe went with Hood to Branson numerous times, and on more than one occasion spent time alone with Hood. While in Branson, Hood would take Doe to amusement parks and to singing and dancing shows. Hood purchased clothes for Doe and suggested that he could help her get into show business. It was alleged that during these visits Hood sexually abused Doe. Doe testified extensively about the abuse and said she feared telling anyone what was going on because she worried it would be considered "[her] fault and that [Hood] might hurt [her] family or something." Apparently, Hood was helping Doe's mother to stay out of jail and paying many of her bills.

At some point, Doe told her mother that contrary to her mother's understanding, the trips to Branson did not involve dancing and singing lessons. Shortly thereafter, checks which Hood had given Doe's mother started bouncing. Doe's mother decided Doe was no longer permitted to see Hood or visit Branson.

On May 9, 2003, after Doe's mother refused to allow Hood to see Doe, Hood made plans to meet Doe. Hood told Doe to tell her mother that she was going to spend the night at a friend's house. Instead, Hood picked up Doe and drove her to an apartment in Branson. When Doe did not return home, Doe's

mother called the police. Hood soon learned that the police were looking for him and he took Doe to Texas. While in Texas, Hood dyed Doe's hair to conceal her identity. Hood told her that if the police ever found them, she should say that he never touched or abused her.

The authorities located Hood and Doe at a trailer in Pearland, Texas. In the early morning hours of May 15, 2003, FBI agents forcibly entered the trailer and found Hood and Doe sleeping in the same bed. Hood was wearing underwear and Doe was wearing a pair of shorts. FBI Special Agent Glenn Gregory secured Hood and requested an evidence team to come in and retrieve the bed linens, at which point Hood turned his head and said, "I never touched her."

Hood was taken into custody by the FBI.[2] When asked by an FBI agent how many times he had sex with Doe, Hood said, "If I told you, you would bury me." Hood later told a Pearland, Texas police officer that the sexual contact between Hood and Doe began in March 2003 when Doe asked him if she was still a virgin. While Doe was seated on the toilet, Hood got down on his hands and knees and looked inside her vagina, saying that, as far as he could tell, she was still a virgin. Hood also indicated that the two had kissed, saying that Doe "would French-kiss him like a 30-year-old woman." Hood further told police that

---

[2]Hood is not contesting the admissibility of statements he made to investigators.

while in Pearland, he and Doe had been playing a dice game in which one person had to do what the other person said if that person rolled a one. Hood said that when Doe rolled a one, she asked Hood to lick her on the butt, which he did, conceding that "while he was licking her on the butt hole, his tongue could have entered her vagina because there's not much space between the two holes." Hood also told police that Doe would try to put her hands down his pants, and once wanted to perform oral sex on him. Hood, however, denied having sex with Doe.

After Hood was arrested, Doe was taken to the Children's Assessment Center in Houston. Ellen Taft, a pediatric nurse practitioner at the Center, performed a medical forensic exam on Doe. With the aid of a videotape detailing Doe's genital exam, Taft testified that she observed injuries consistent with penetrating trauma to Doe's anus and vagina. Taft testified that this was consistent with what Doe told Taft; that Hood had touched her genital area with his finger, tongue, and penis.

A forensic DNA examiner from the FBI testified about DNA evidence found on various items. Semen was identified on panties found in Hood's Hollister apartment, in swabbings taken from the fingernails of Doe, and in a breast swab taken from Doe. The DNA contained in the semen was tested and matched, with varying degrees of probability, DNA samples taken from Hood. In addition, DNA found on various sex toys matched Doe's DNA.

On November 19, 2003, a jury convicted Hood of all six counts and answered in the negative a special interrogatory asking whether Doe had the capacity to consent to accompany Hood across state lines. Based on a combined adjusted offense level of thirty-nine and a criminal history category of IV, the presentence report ("PSR") recommended a range for imprisonment of 360 months to life. The district court sentenced Hood to life on each count. Hood filed a timely notice of appeal and now challenges his convictions and sentence.

## III. DISCUSSION

### A. Jury Instruction

Hood contends that the district court erred when it refused to give the instruction submitted by the defense and that the instruction given by the district court improperly suggested a *per se* rule of incapacity to consent based on the age of the victim. "We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *United States v. McClatchey*, 217 F.3d 823, 834 (10th Cir. 2000) (quotation omitted).

After reviewing the record and the instruction given by the district court, this court concludes that the district court did not abuse its discretion in giving its consent instruction, and that the district court's instruction correctly stated the

governing law and provided the jury with a full understanding of consent as a defense to kidnapping and the issue of Doe's capacity to consent. *See Chatwin v. United States*, 326 U.S. 455, 460 (1946); *United States v. Toledo*, 985 F.2d 1462, 1467 (10th Cir. 1993). Contrary to Hood's argument, the instruction did not suggest a *per se* rule of incapacity to consent based on the age of the victim, but informed the jury of the variety of factors to consider in determining the victim's capacity to consent. *See Chatwin*, 326 U.S. at 461-62.

**B.      Sufficiency of the Evidence**

Hood argues that the evidence presented at trial was insufficient to support his convictions for kidnapping and aggravated sexual abuse of a child. To evaluate the sufficiency of the evidence to support a criminal conviction, we conduct a *de novo* review of the entire record on appeal. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081-82 (10th Cir. 2004). The relevant question is "whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005) (quotations omitted). In making this determination, "[w]e do not question the jury's credibility determinations or its conclusions about the weight of the

evidence." *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000) (quotations omitted).

The essential elements of kidnapping under § 1201 include "(1) transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom, reward, or otherwise, (4) with such acts being done knowingly and willfully." *United States v. Walker*, 137 F.3d 1217, 1220 (10th Cir. 1998). The evidence showed that Hood instructed Doe to meet him on May 9 and subsequently took Doe from Oklahoma to Missouri to Texas. Doe testified about the sexual abuse that occurred during the time she was with Hood. After hearing from Doe and various other witnesses and being instructed to consider a variety of factors, the jury reasonably decided that Doe lacked the capacity to consent, a determination which in this case was essentially one of credibility. *Cf. United States v. Beers*, 189 F.3d 1297, 1301 (10th Cir. 1999). Doe's incapacity to consent renders irrelevant Hood's suggestion that he could not have taken and held her against her will because she was free to leave Hood at any time. In addition to the testimony of Doe, the government introduced various other witnesses, including witnesses whose testimony suggested Hood planned the kidnapping well in advance, and Hood's own statements that corroborated the alleged kidnapping. All of this evidence, taken together and viewed in the light most favorable to the government, shows: (1) Hood transported Doe from

Oklahoma to Missouri to Texas; (2) Doe lacked the capacity to consent; (3) Hood transported Doe to receive a benefit for himself, i.e., the sexual abuse of Doe; and (4) Hood acted knowingly and willfully.

With regard to the aggravated sexual abuse convictions, Hood contends that the testimony of Doe was "simply incredulous," the testimony of the pediatric nurse was false, and the DNA evidence and his own statements to investigators were unreliable. Even ignoring Taft's testimony, *see* discussion *infra* Part III.C, the evidence supporting Hood's convictions was overwhelming. Doe testified at length regarding the sexual abuse, describing: (1) where and how Hood touched her; (2) that Hood put his penis inside her mouth and when Hood ejaculated it tasted like "salt"; and (3) that Hood put his penis inside of her and sometimes he used a condom and sometimes he did not. In her testimony, Doe also said that Hood had a "mole on his butt" which was subsequently corroborated by a photograph taken by the FBI that was admitted at trial. In addition to the testimony of Doe, the government put on numerous witnesses corroborating the surrounding events, DNA evidence linking Hood to Doe, and Hood's own damning statements to investigators. Taken together, the evidence was more than sufficient to permit the jury to find Hood guilty of aggravated sexual abuse of a child.

## C. Motion for a New Trial

After Hood's conviction, but before sentencing, the office of the United States Attorney was contacted by the FBI regarding Ellen Taft, the pediatric nurse who testified at Hood's trial. In December 2003 the Children's Assessment Center conducted a peer review of some of the cases handled by Taft due to suspicions that she was "over-calling" many of her cases to show signs of sexual abuse when in fact, this type of evidence was not present. After reviewing a chart, photographs, and a videotape taken during Taft's examination of Doe, reviewers concluded that Taft "over-called" the evidence related to Doe. Hood filed a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, arguing that he was entitled to a new trial based on this newly discovered evidence. *See* Fed. R. Crim. P. 33(a). The district court denied the motion.

We review the district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997). A new trial based on newly discovered evidence is warranted if

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by [the defendant's] own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*Id.* (quotation omitted). In denying Hood's motion, the district court concluded that any evidence that Taft "over-called" the examination of Doe would not likely affect the guilty verdicts. We agree. As noted above, the evidence of Hood's guilt, even excluding Taft's testimony, was overwhelming. In addition to the testimony of Doe, the government presented numerous supporting witnesses, DNA evidence, and Hood's own incriminating statements. The district court therefore did not abuse its discretion in denying Hood's motion for a new trial.

**D.    Sentencing**

At sentencing, Hood raised an objection under the Supreme Court's decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The district court denied Hood's objection, concluding that *Blakely* does not apply to the federal Sentencing Guidelines. We now know, of course, that the district court erred. *See United States v. Booker*, 125 S. Ct. 738, 749-50 (2005).

In *Booker*, the Supreme Court held that the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. *Booker* makes clear that a court imposing a sentence by application of the mandatory federal Sentencing Guidelines could commit two types of error: constitutional error and non-

constitutional error.  *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005) (en banc).  Constitutional *Booker* error results from a district court "relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." *Id.* at 731.  Non-constitutional error results from a district court's mandatory application of the Guidelines in contravention of the remedial portion of the Supreme Court's decision in *Booker* which renders the Sentencing Guidelines advisory only. *Id.* at 731-32.  Here, the district court did not rely on judge-found facts to mandatorily enhance Hood's sentence.  This case therefore presents only non-constitutional *Booker* error.[3]

Because Hood raised *Blakely* below, we review the district court's error for harmlessness. *United States v. Labastida-Segura*, 396 F.3d 1140, 1142-43 (10th Cir. 2005); *see also United States v. Glover*, __ F.3d __, No. 04-5150, 2005 WL 1541083, at *4 (10th Cir. July 1, 2005) (discussing government's burden).  By imposing a life sentence, the district court exercised its limited pre-*Booker* discretion and sentenced Hood to the top of the applicable Guidelines range.  This demonstrates that the district court would not have imposed a lesser sentence if it

---

[3]The facts necessary to Hood's sentencing enhancements–convictions on multiple counts, the age of the victim, and that the victim was abducted–were established by the jury verdict. *See* 18 U.S.C. §§ 1201(a)(1), 2241(c).  In addition, the enhancements attributed to the victim being in the custody and care of the defendant had no effect on the calculation of the recommended sentencing range.

had been operating under an advisory Guidelines regime. *Compare United States v. Riccardi*, 405 F.3d 852, 876 (10th Cir. 2005), *with Labastida-Segura*, 396 F.3d at 1143. We therefore have no difficulty concluding that the error committed by the district court in this instance was harmless because "the error did not affect the district court's selection of the sentence imposed." *Labastida-Segura*, 396 F.3d at 1143 (quotation omitted).

## IV. CONCLUSION

For the reasons set out above, Hood's convictions and sentence are **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge