[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15795
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60005-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOEL WAYNE GRIFFIN, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 1, 2013)

Before DUBINA, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

After a jury trial, Joel Griffin, Jr., appeals his conviction for kidnapping, in violation of 18 U.S.C. § 1201(a).  Griffin argues that the government failed to introduce sufficient evidence to permit the jury to conclude that he willfully held and transported his girlfriend in interstate commerce for revenge and intimidation.  He also argues that the indictment failed to state an offense under Section 1201(a) when it charged that Griffin held his girlfriend "for revenge and intimidation" and that, if it did state an offense, Section 1201(a) is unconstitutionally vague.  Lastly, he argues that the district court erred in admitting improper character evidence.

## I.  BACKGROUND

The government introduced evidence at trial that Griffin started dating Surya Thijssen in 2010.  In the summer of 2011, Thijssen bought a house in Miramar, Florida, and Griffin moved in with her almost immediately.  Thijssen enrolled at FIU and went to her first day of classes on August 22, 2011.  Thijssen testified that the evening after her first day of classes, Griffin took away her phone and computer, made her cancel her Facebook account, and started accusing her of cheating on him.

Thijssen went on to testify about a succession of violence and threats that began the following day. According to her testimony, early the next morning Griffin woke up in a rage and continued to ask her questions about cheating on him.  She went on to say that over the next three days, Griffin hit her, punched her,

2

choked her, cut her with a knife, burned different parts of her body with a cigarette lighter and a cigarette, pulled her hair out, dragged her around, urinated on her, and spit on her. During all this, he continued to accuse her of cheating and being with other men. Griffin also threatened to kill her if she made noise that someone could hear, if she ran away, if she said anything on the phone when people called, or if she showed someone her injuries. Throughout the ordeal Thjissen was scared, wanted to leave, and thought she was going to die. Griffin prevented her from leaving by sleeping with his arm around her neck and depriving her of clothing. At one point when they were leaving the house to go to a store, Thijssen tried to loosen Griffin's grip on her and he hit her. While they were at the store Griffin locked her in the car with the alarm on and threatened to kill her if she tried to run away or do anything stupid.

Thijssen also testified about her forced trip with Griffin from Florida to Delaware. She testified that after three days of violence and threatening her in her apartment, Griffin became nervous and said they had to leave because someone was going to call the police. Thjissen did not want to leave with him, but thought he would kill her if she did not. They drove north and spent the night in a motel in Northern Florida, where he again slept with his arm around her. The next day they reached Pennsylvania and eventually stayed two nights with Griffin's cousins in Delaware. During the drive Griffin spoke to people by phone and told them that he

3

was acting this way because Thijssen cheated on him and he could not trust her. When he would get off the phone he would be mentally and emotionally aggressive, angry, and degrade Thjissen.

While in Delaware, Thijssen said Griffin ordered her to leave on her sunglasses, which covered the injuries he caused to her face. He took her to a bank to withdraw more than $4,500 from her account, leaving her with a balance of $0.78. Thijssen also testified that Griffin made her sleep on the floor next to a dog cage, called her a dog, and said he hated her and was going to kill her.

Griffin's cousin Sarah Rivera testified that Griffin told her that Thijssen had cheated on him with numerous men and that he was done with her. Rivera said she asked Griffin why Thijssen was here and that he responded that he wanted to wait for the black eye to clear up. She also testified that Griffin told her not to let Thijssen use Rivera's phone to call the police. Rivera said that she did not initially call the police because Thijssen told her not to do anything because Thjissen thought Griffin would kill her. Eventually Rivera called the police and Griffin was arrested.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

We review de novo a challenge to the sufficiency of the evidence, considering the evidence in the light most favorable to the government, and

drawing all reasonable inferences and credibility choices in the government's favor. United States v. Friske, 640 F.3d 1288, 1290–91 (11th Cir. 2011). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Herrera, 931 F.2d 761, 762 (11th Cir. 1991). "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). To support a conviction under 18 U.S.C. § 1201(a), the government must show that the defendant (1) knowingly and willfully (2) transported in interstate commerce (3) an unconsenting person who was (4) held for ransom, reward, or otherwise. United States v. Lewis, 115 F.3d 1531, 1535 (11th Cir. 1997).

Griffin argues that the evidence was not sufficient to show he willfully transported Thijssen for the purpose of revenge and intimidation, because there was no evidence of a connection between the crossing of state lines and the revenge and intimidation. Relying on a statement made during the government's closing argument that 99 percent of the crime took place in Florida, Griffin claims that the crime was completed in Florida and the trip to Delaware was not sufficiently connected to what happened in Florida. Based on this, argues Griffin,

5

he may be guilty of assault and false imprisonment in Florida, but a reasonable jury could not have found him guilty of kidnapping.

Considering the evidence in the light most favorable to the government, there was sufficient evidence to find a connection between Griffin's conduct in Florida and the trip to Delaware such that a jury could reasonably find that Griffin transported Thijssen across state lines for revenge and intimidation.  Although it is true that a majority of the physical abuse occurred before Griffin took Thijssen across state lines, there was evidence that Griffin continued to seek revenge and intimidate Thijssen in other ways during the trip and upon arriving at his cousins's house.  Building upon the atmosphere of intimidation and fear Griffin created in Florida, Thijssen testified that he continued to be mentally and emotionally aggressive, angry and degrading.  Thijssen testified that she did not want to travel out of state with him, but was afraid he would kill her if she did not go.  There was evidence that during the trip Griffin forced her to empty her bank account, continued to control her cell phone use, and said he was going to kill her.  He also continued to talk about Thijssen cheating on him, supporting a finding that he was still motivated by revenge.  Relying on Rivera's testimony that Griffin was waiting for Thijssen's injuries to heal, the jury could have also concluded the trip played a continuing purpose in his vengeful acts. On this record, it was reasonable for a jury to conclude that Griffin brought Thijssen to Delaware for revenge and

6

intimidation, and the trip was a continuation of the violence and mental and physical control that had begun in Florida.

## B.  SUFFICIENCY OF THE INDICTMENT

Whether an indictment sufficiently presents the elements of the charged offense is a question of law that we review de novo.  United States v. Tobin, 676 F.3d 1264, 1272 (11th Cir. 2012).  Federal Rule of Criminal Procedure 12(b)(3)(B) permits a court at any time while the case is pending to hear a claim that the indictment fails to state an offense.  United States v. Izurieta, 710 F.3d 1176, 1179 (11th Cir. 2013).

Here, the indictment charged that Griffin "did unlawfully seize, confine, kidnap, abduct, and carry away, and hold for revenge and intimidation, a person, that is, S.T., and did willfully transport S.T. in interstate commerce."  Griffin claims the indictment was insufficient to state a kidnapping offense, because revenge and intimidation do not satisfy Section 1201(a)'s requirement that the kidnapping be "for ransom or reward or otherwise."

The phrase "or otherwise" means that the defendant acted to "secure some benefit to himself."  Gooch v. United States, 297 U.S. 124, 128, 56 S. Ct. 395, 397 (1936).  The benefit does not have to be pecuniary, nor does it have to be illegal.  United States v. Healy, 376 U.S. 75, 81–82, 84 S. Ct. 553, 557 (1964).  This Court has held that a defendant's admission that he kidnapped the victim for

7

"companionship" constituted a benefit and satisfied this element of the offense.

United States v. Lewis, 115 F.3d 1531, 1536 (11th Cir. 1997).  Given the breadth

of the term "or otherwise," the charge that Griffin acted "for revenge and

intimidation" was sufficient to charge Griffin for his kidnapping conviction.

### C.  CONSTITUTIONALITY OF § 1201(a)

Griffin claims that if "revenge and intimidation" are a benefit covered by the

phrase "or otherwise," then the kidnapping statute is unconstitutionally vague.  We

review de novo whether a statute is unconstitutionally vague.  United States v.

Duran, 596 F.3d 1283, 1290 (11th Cir. 2010).  "If a vagueness challenge to a

statute does not involve the First Amendment, the analysis must be as applied to

the facts of the case."  Id.  Void for vagueness "means that criminal responsibility

should not attach where one could not reasonably understand that his contemplated

conduct is proscribed."  United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32-

33, 83 S. Ct. 594, 598 (1963).

Griffin's vagueness argument is foreclosed by United States v. Vickers, 578

F.2d 1057 (5th Cir. 1978).[1]  In Vickers, the Fifth Circuit found that the "or

otherwise" language was not unconstitutionally vague, because it was "sufficient to

inform a reasonable person that the taking of any person, at gunpoint, against her

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

will, handcuffed, from Florida to North Carolina, there to handcuff her to a bed and remove her clothes so that she will not escape, is proscribed regardless of the relationship of the parties." Id. at 1058 (emphasis removed); see also United States v. Walker, 137 F.3d 1217, 1219 (10th Cir. 1998) (noting that at least five circuits have rejected vagueness challenges to the "or otherwise" portion of Section 1201). Similarly, here the statute is sufficient to warn a reasonable person that it is unlawful to use a pattern of physical violence and threats to coerce an unwilling person to travel from Florida to Delaware because of perceived infidelities.

### D.  ADMISSION OF CHARACTER EVIDENCE

Lastly, Griffin claims the jury heard improper character evidence from Thijssen and prosecution witness Sarah Rivera.  Griffin acknowledges that he did not object to any of the testimony about his character, did not request any curative instructions, and did not request a mistrial.  He nonetheless argues the impermissible character evidence undermined the fairness of the trial.

Where, as here, a party does not preserve an objection to the admission of evidence, we apply plain error review and the challenging party must demonstrate that the error affected his substantial rights. United States v. Gamory, 635 F.3d 480, 492 (11th Cir. 2011).  In order for an error to affect substantial rights, the error must have affected the outcome of the district court proceedings. Id. at 494 n.15 (quotation marks omitted).

9

Griffin argues that the district court improperly admitted irrelevant, prejudicial testimony attacking his character and inappropriately allowed witnesses to ask the jury to send Griffin to jail.  He claims admission of the testimony violated Federal Rules of Evidence 404, 608, and 609.  Specifically, Griffin objects to Thijssen's testimony about her anger towards him, her hope that he would not get out of jail easily, and her feeling that "whatever he gets, he deserves."  Griffin also argues that his father's statements to Thijssen that "whatever [Griffin] gets, he deserves" and his father urging her to testify so that Griffin "can go to jail" are inadmissible.  Finally, Griffin objects to Rivera's testimony about what Thijssen had told her about Griffin, about Rivera's changed perspective of Griffin once she saw Thijssen's injuries, about Griffin being a "monster," and about her belief that Griffin should be "locked up."

None of the Federal Rules of Evidence cited by Griffin apply to the testimony he belatedly objects to in this appeal.  Rules 608 and 609 address character evidence that can be used to attack a witness's credibility or character for truthfulness.  Fed. R. Evid. 608 and 609.  Because Griffin was not a witness, those rules do not apply here.  In addition, the evidence Griffin cites is neither evidence of a general character trait, nor evidence of an unrelated crime or wrong.  As a result, Federal Rules of Evidence 404(a) and 404(b) do not apply either.

10

For this issue, Griffin's only actual argument that goes beyond a mere reference to these Rules of Evidence is that the evidence was irrelevant and prejudicial. This argument is governed by Federal Rules of Evidence 401 and 403. Under Rule 401 evidence is relevant if "it has any tendency to make a fact more or less probable," or if it "is of consequence in determining the action." Id. 401. Rule 403 permits a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Id. 403.

The evidence Griffin identifies in his appeal was admissible under Rule 401(b) as evidence "of consequence in determining the action," because it showed Thijssen was transported to Delaware against her will and demonstrated the revenge and intimidation benefits that Griffin allegedly received from the kidnapping. Also, Griffin argued at trial that Thijssen voluntarily traveled to Delaware and still had feelings for him, relying on evidence of their prior relationship and letters written after his arrest to support this theory. In light of this defense, the testimony Griffin identifies was relevant because it had a "tendency to make [it] more or less probable" that Thijssen's trip with Griffin was not voluntary. Id. 401(a). Given the direct connection of this evidence to the elements of the offense, it was not plain error to find under Rule 403 that " its probative value is substantially outweighed by a danger of . . . unfair prejudice." Id. 403.

11

Finally, even if it was plain error to permit the testimony, we conclude that the error here did not affect Griffin's substantial rights. Looking at the record as a whole, we conclude that this testimony did not have a substantial influence on the outcome of the trial. See Gamory, 635 F.3d at 494 n.15. The government presented significant evidence, other than the testimony to which Griffin now objects, to support the jury's verdict. This evidence included Thijssen's extensive testimony about what happened before Griffin's arrest, as summarized above. It also included Rivera's remaining testimony about Griffin's statements and behavior, as well as photographs and a forensic nurse's testimony describing Thijssen's injuries.

## III.  CONCLUSION

Based on this Court's consideration of the parties's arguments and the underlying record, we affirm.

**AFFIRMED.**