**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0004n.06
Filed: January 2, 2008

**No. 06-6364**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| **JOEL UTRERA**, | ) | |
| | ) | **O P I N I O N** |
| *Defendant-Appellant*. | ) | |
| | ) | |

BEFORE:    MERRITT, COLE, and GRIFFIN, Circuit Judges.

**R. GUY COLE, JR.**  Defendant-Appellant Joel Utrera appeals his jury conviction of

interstate domestic violence under 18 U.S.C. § 2261(a)(1) and his sixty-month sentence. Utrera

contends that he was denied counsel at a critical stage of the proceedings, that venue was not proper,

that evidence was admitted improperly and was, in any event, insufficient for a conviction, and that

his sentence is unreasonable. For the reasons that follow, we **AFFIRM** the conviction and sentence.

**I. BACKGROUND**

Utrera and Diosmary Aguilar lived together for three years and have one child in common.

They had a violent relationship, and when Aguilar left Utrera for another man in 2003, she obtained

a domestic violence protection order against Utrera.  Utrera, however, subsequently violated the

order, stabbed her three times, and served fourteen months in prison for the assault.  Once Utrera was

released in 2005, he and Aguilar began dating again, but Aguilar left him in March 2005 to reunite with Samuel Figueroa, a former boyfriend. At that time, Utrera was living with his mother in Louisville, Kentucky and Aguilar resided across the river in Jeffersonville, Indiana.

In the early morning hours of April 23, 2005, Utrera drove from his mother's home in Louisville to Aguilar's home in Jeffersonville. Aguilar was at home with Figueroa, Figueroa's niece, and Aguilar's and Utrera's six-year-old son. Utrera broke though the living room window while holding a long metal object in his hand. Utrera's head and upper body protruded through the window, but Figueroa stood by the window to keep Utrera from entering the premises. Aguilar called the police several times beginning at 1:19 a.m., but had difficulty communicating because she does not speak English. By the time the police arrived around 1:25 a.m., Utrera was gone. The police advised Aguilar to file a complaint, and around 4:00 a.m., the police arrested Utrera at his mother's home in Kentucky.

On September 6, 2005 Utrera was charged by a three-count indictment with (1) transmitting a threat in interstate commerce, (2) crossing state lines with the intent to commit a crime of domestic violence, and (3) crossing state lines with the intent to violate a protective order. Prior to trial, Utrera moved to dismiss his attorney from the Federal Public Defenders' office because he claimed that she did not provide his family with the correct location of a court hearing. His attorney filed a motion on his behalf requesting appointment of another attorney, but the magistrate judge found no misconduct and advised Utrera to cooperate with appointed counsel. The day before the trial was scheduled to start, Utrera again moved to dismiss his attorney. The district judge agreed with the magistrate judge's decision and allowed Utrera to choose between representing himself, with or

without a lawyer, or keeping the same counsel. Utrera chose to represent himself. Utrera changed his mind three hours later, after sitting through a pretrial hearing in which several evidentiary matters were discussed, and he decided to retain his prior counsel for trial. The judge then granted Utrera's motion for continuance and scheduled another pretrial hearing to review the same matters addressed during the hearing in which Utrera had proceeded pro se. The day of trial, the district court granted Utrera's motion to sever the counts, and the parties proceeded to trial on Count 2 alone, the interstate domestic violence charge under 18 U.S.C. § 2261(a)(1). After a four-day trial, the jury found Utrera guilty of the offense and issued a special finding that he had used a dangerous weapon during its commission. The district court sentenced Utrera to sixty months' imprisonment and three years' supervised release. The United States dismissed the remaining counts without prejudice. Utrera timely filed this appeal.

**IV. ANALYSIS**

On appeal, Utrera makes five arguments: (1) he was denied counsel at a critical stage of the proceedings; (2) the Western District of Kentucy was not a proper venue; (3) the district court erred in admitting evidence pursuant to Fed. R. Evid. 404(b); (4) the evidence presented at trial was insufficient to support his conviction; and (5) the district court failed to consider the factors set forth in 18 U.S.C. § 3553 when imposing Utrera's sentence. We address each in turn and conclude that all of Utrera's arguments are without merit.

**A. Right to Counsel**

Utrera argues that he was denied counsel at a critical stage in the proceedings — the pretrial conference during which he proceeded pro se — because, he claims, when he elected to proceed pro se he had not knowingly and intelligently waived his right to counsel. "The Sixth Amendment

secures to a defendant who faces incarceration the right to counsel at all 'critical stages' of the criminal process." *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006) (citing *United States v. Wade*, 388 U.S. 218, 224 (1967)). "[T]he period between appointment of counsel and the start of trial is indeed a 'critical stage' for Sixth Amendment purposes." *Hunt v. Mitchell*, 261 F.3d 575, 582-83 (6th Cir. 2001) (quoting *Mitchell v. Mason*, 257 F.3d 554, 566 (6th Cir. 2001)). The Sixth Amendment also guarantees defendants the right to represent themselves at trial. *Faretta v. California*, 422 U.S. 806, 819-20 (1975). The right to counsel and the right to self-representation are "two faces of the same coin, in that the waiver of one right constitutes a correlative assertion of the other." *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970) (internal citation omitted). When a defendant asserts his right to self-representation, therefore, he necessarily waives his right to counsel. Such decision, however, must be voluntary and knowing. *Faretta*, 422 U.S. at 835.

Utrera contends that he was denied his right to counsel at a critical stage of the criminal process because he was "forced" to represent himself during a pretrial hearing. The record, however, shows that Utrera asserted his right to self-representation, thereby waiving his right to counsel. At an ex parte hearing on May 23, 2006 (counsel for the United States was not in attendance because attorney-client issues were discussed), defense counsel explained to the district court that Utrera refused to cooperate with her after the magistrate judge denied Utrera's motion for new counsel. Utrera had complained that he wanted a male attorney and that his current female attorney, an assistant federal public defender, had given incorrect information to his family about the location of a hearing. The magistrate judge found no misconduct of any kind and denied Utrera's motion. Utrera, however, refused to meet with his attorney to discuss his case and sent her a note saying, "I

don't want you as my public defender. I'm going to get a new one."

At the hearing, the district court inquired into the reason for Utrera's dissatisfaction with counsel. Utrera offered the same reasons the he had presented to the magistrate judge. The district judge explained that the court had already reviewed those reasons and found them to be unpersuasive because there had merely been a misunderstanding about the location of the hearing.[1] The judge explained that although Utrera's counsel was an excellent lawyer, if Utrera had valid reasons why the lawyer should be dismissed, the court would dismiss her and appoint a new one. The judge, however, concluded that Utrera had not given "good and valid reasons" why the court should substitute counsel. The district court then gave Utrera a choice: "Your choice is that you can represent yourself if you want to without a lawyer. You could also have a lawyer – you could represent yourself and a lawyer could advise you. Or [your current counsel] could represent you." (JA 64-65.) Utrera responded, "Myself. I will represent myself." (JA 65.) Therefore, "by rejecting all of his options except self-representation, [Utrera] necessarily chose self-representation." *King*, 433 F.3d at 492; *see also United States v. Green*, 388 F.3d 918, 921-22 (6th Cir. 2004) (holding that an unreasonable demand for dismissal of counsel and appointment of new counsel is the equivalent

---

[1]During the ex parte hearing, defense counsel stated for the record:

> [T]here were factual findings under [the magistrate judge] that I did not mislead his family or tell them where not to go, that I specifically called his family from the courtroom with a Spanish interpreter, and there was testimony that the family knew that I need – I told them I needed them. I told them their testimony was important, and I told the interpreter where to tell them to go. Additionally, he specifically said, I want a male lawyer.

(JA 68.)

of a waiver of right to counsel); *United States v. Clemons*, No. 97-6267, 1999 WL 196568, *3 (6th Cir. Mar. 30, 1999) (concluding that the district court acted within its discretion by denying counsel's motion to withdraw, submitted upon defendant's request, and telling defendant that he would have to choose between self-representation or representation by current counsel); *United States v. Gangler*, No. 95-2406, 1997 WL 618783, *2-3 (6th Cir. Oct. 6, 1997) (per curiam) (holding that waiver of right to counsel can be inferred from defendant's unreasonable refusal to proceed with appointed counsel at sentencing); *United States v. Hochschild*, No. 96-3517, 1997 WL 705089, *4 (6th Cir. Nov. 5, 1997) (concluding that defendant waived right to counsel where he sought withdrawal of court-appointed counsel and refused to cooperate with public defender).

Having concluded that Utrera waived his right to an attorney for a three-hour period, we must now determine whether his waiver was knowing and voluntary. *Faretta*, 422 U.S. at 835. To insure a knowing and voluntary waiver, a trial court must inform a defendant of the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)). This Circuit directs federal district courts to conduct the inquiry set forth in 1 *Bench Book for United States District Judges* 1.02-2 (3d ed.1986), "or one covering the same substantive points," when an accused seeks to waive representation by counsel. *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir.1987). Substantial compliance and not literal adherence to those guidelines is required. *United States v. Miller*, 910 F.2d 1321, 1324 (6th Cir. 1990).

In the instant case, the district court rigorously explained the pitfalls of self-representation. The court repeatedly attempted to dissuade Utrera from proceeding pro se, pointed out that Utrera

lacked appropriate legal training, and explained that by choosing to represent himself, Utrera would likely increase his risk of conviction. Though not following the model inquiry word for word, the court spoke in plain and clear terms so that Utrera, communicating through an interpreter, would understand the import of his decision. Thus, we find that the district court substantially complied with the *McDowell* inquiry, and that Utrera knowingly and voluntarily waived his right to counsel.[2]

**B. Venue**

Utrera contends that the District Court for the Western District of Kentucky was not the proper venue for prosecution of the offense because, he argues, the Government offered no proof that he committed any "relevant act" within the district court's jurisdiction. Typically, this Court reviews de novo a district court's interpretation of venue statutes, and reviews for abuse of discretion the district court's decision whether to dismiss for lack of venue. *United States v. Fonscesca*, 193 F. App'x. 483, 492 (6th Cir. 2006) (per curiam) (citing *United States v. Brika*, 416 F.3d 514, 527 (6th Cir. 2005)). Because Utrera did not raise his venue objection in the district court, however, this Court reviews only for plain error, "requiring an error that is clear or obvious, affecting a defendant's

---

[2] We also note that although Utrera knowingly and voluntarily waived his right to counsel, his stint of self-representation lasted less than three hours. Immediately after the ex parte hearing in which Utrera decided to proceed pro se, the parties met for a pretrial conference to discuss evidentiary issues. Later that day, the parties returned to the court where Utrera explained that he changed his mind and "decided to take the defense of the ladies that were willing to represent" him. (JA 51.) The court granted a short continuance requested by Utrera's counsel in light of his decision to begin cooperating. The Government requested that the parties address the same pretrial issues discussed during the previous conference, and the court scheduled another pretrial conference several days out to allow defense counsel time to respond to the evidentiary issues raised by the Government. Before trial began, therefore, the court and the parties re-addressed substantially all of the issues discussed in the pretrial conference in which Utrera proceeded pro se.

substantial rights, and seriously affecting the fairness, integrity or public reputation of judicial proceedings." *United States v. Lopez-Medina*, 461 F.3d 724, 746 (6th Cir. 2006). Utrera fails to show error, plain or otherwise.

A defendant is guaranteed a trial in the state and district where the offense was committed. U.S. Const. art. III, § 2, cl. 3 (criminal trials "shall be held in the State where said Crimes shall have been committed"); U.S. Const. amend. VI ("the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"); Fed. R. Crim. P. 18 ("[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed"). The law also recognizes, however, that crimes can be committed in more than one district, and that venue, therefore, may properly lie in more than one district. *See* 18 U.S.C. § 3237 ("any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed").

Utrera contends that venue is improper in Kentucky and that the Southern District of Indiana—where the break-in occurred—is the only proper venue. This argument is without merit. The statute under which Utrera was charged states that "[a] person who travels in interstate . . . commerce . . . with the intent to kill, injure, harass, or intimidate a spouse or intimate partner, and who, in the course of or as a result of such travel, commits or attempts to commit a crime of violence against that spouse or intimate partner" commits interstate domestic violence. 18 U.S.C. § 2261(a)(1) (2005). The elements of Utrera's crime, therefore, require the Government to prove that

the defendant traveled from one state to another. "Thus, by definition, the crime is one that could not have been committed solely in the [Southern District of Indiana], so the multi-district venue statute 18 U.S.C. § 3237 applies." *Brika*, 416 F.3d at 528. The Government introduced evidence that Utrera traveled from Kentucky to Indiana with the intent to commit a crime of domestic violence. In other words, the Government provided evidence that the offense began in one district (i.e., Utrera left Kentucky with the requisite state of mind) and was completed in another (i.e., he broke in Auguilar's home in Indiana). Therefore, Utrera may be prosecuted "in any district in which such offense was begun, continued, or completed," 18 U.S.C. § 3237, and the Western District of Kentucky, where the crime began, is proper.

**C. Rule 404(b) Evidence**

Utrera contends that the district court erred when it permitted evidence under Fed. R. Evid. 404(b) that Utrera stabbed Aguilar in 2003, that he served over a year in prison for that act, and that he called and threatened Aguilar one month before the charged offense. Following the Supreme Court's decision in *General Electric Co. v. Joiner*, 522 U.S. 136, 142-43 (1997), this Court reviews all evidentiary issues under an abuse of discretion standard. *United States v. Mack*, 258 F.3d 548, 553 (6th Cir.2001). Furthermore, "a district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of evidence." *Id.* at 555 (quoting *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989)).

Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person or in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). Further, a limited category of "background" or "res gestae" evidence — evidence that consists of acts "the telling of which is necessary to complete the story of the charged offense" — does not implicate Rule 404(b). *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Utrera does not argue that there was insufficient evidence that the prior bad acts introduced by the Government actually occurred or that the acts were not probative of a material issue other than his character. He submits instead that, "regardless of any admissibility issue, the evidence was too inflammatory to introduce to the jury."

Utrera is correct that "[i]n determining whether to admit evidence under Rule 404(b) for 'other acts,' the court must balance the probative value of the evidence with the danger of undue prejudice in the manner required by Rule 403." *United States v. Wells*, 211 F.3d 988, 999 n.6 (6th Cir. 2000); Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

The record reflects that the district court gave careful and thorough consideration to the relevant facts and law in reaching its conclusion that the challenged evidence was properly admissible under Rules 404(b) and 403. The district court ruled that evidence of the stabbing, jail time, and phone threat was admissible to show Utrera's motive and intent on the night of the attempted assault and to provide necessary context of the parties' relationship. Aguilar was, therefore, permitted to testify as to the time line of her relationship with Utrera and as to the prior

phone call and stabbing in order to establish that Utrera had traveled from Kentucky to Indiana with the requisite intent of harming her. Specifically, Aguilar testified that on March 20, 2005, Utrera called her and said that he was not afraid of being in jail and that he wanted to "finish what he started." In order to explain that phrase to the jury, and to prove the requisite intent, Aguilar testified that Utrera stabbed her three times in 2003, went to jail, and got out several months before the attempted assault. Aguilar believed that Utrera came to her house the night of the break-in to "finish what he started" in reference to the prior stabbing. The evidence, therefore, was properly admitted to show that Utrera traveled across state lines with the intent of harming Aguilar. The district court recognized that evidence of the stabbing, jail time, and phone threat was prejudicial, but not prejudicial enough to *substantially outweigh* the probative value of the evidence, and limited any undue prejudice by clearly and repeatedly instructing the jury on the narrow and limited purpose for which the evidence could be considered. *United States v. Foster*, 376 F.3d 577, 592 (6th Cir. 2004) (holding that an appropriate instruction "limit[s] any possible unfair prejudice"). Therefore, the district court did not abuse its discretion in admitting the challenged evidence.

**D. Sufficiency of the Evidence**

Utrera next claims that the Government's evidence was insufficient to support his conviction. In reviewing a sufficiency-of-the-evidence claim, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir.2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "We are bound to make all reasonable inferences and credibility choices in support of the jury's verdict." *United States v.*

*Hughes*, 895 F.2d 1135, 1140 (6th Cir.1990).

In order to prove interstate domestic violence, the Government must show that the defendant: (1) traveled in interstate commerce (2) with the intent to kill, injure, harass, or intimidate (3) a spouse or intimate partner (4) and that, in the course of or as a result of such travel (5) the defendant committed or attempted to commit a crime of violence against that spouse or intimate partner. 18 U.S.C. § 2261(a)(1) (2005). Utrera complains that the Government failed to prove that, at that time he crossed into Indiana, he had the intent to harm Aguilar. Utrera also argues that evidence was insufficient that he attempted to commit a crime of violence against an intimate partner because Sam Figueroa, who was at the apartment and who "stole away Mr. Aguilar" from Utrera, could have been the object of Utrera's anger.

The Government introduced the following evidence to show that Utrera had the requisite intent when he crossed into Indiana and that he attempted to commit a crime of violence against Aguilar: (1) Utrera was upset when Aguilar left him to get back together with Figueroa; (2) after Utrera got out of jail, he told Aguilar that he would not allow their child to have a stepfather and that he did not want Aguilar to have any other relationships; (3) one month before the break-in, Utrera called Aguilar and threatened to "finish what he started"; (4) Aguilar believed that Utrera meant he wanted to kill her because he had previously stabbed her three times in the stomach; (5) the night of the break-in, Utrera told his brother that he was mad at Aguilar and "how she behaved"; (6) before breaking the window, Utrera broke the sill on the window as if he were climbing and trying to get into Aguilar's room; (7) during the break-in, while Augilar was on the phone with 911, Utrera called her a "bitch"; and (8) once Utrera broke the window, he tried to climb inside and had a large

screwdriver or knife in his hand.

This evidence, viewed in a light most favorable to the Government, "allow[s] a rational trier of fact to find . . . beyond a reasonable doubt" that Utrera possessed the requisite intent at the time he drove from Kentucky to Indiana and that Utrera attempted to commit a crime of violence against Aguilar. *See United States v. Al-Zubaidy*, 283 F.3d 804, 809 (6th Cir. 2002). Further, as to the requisite intent, "[t]he general rule in criminal cases is that 'intent may be inferred from the totality of circumstances surrounding the commission of the prohibited act.'" *Id.* (quoting *United States v. Stagman,* 446 F.2d 489, 493 (6th Cir.1971)). The jury could have inferred that Utrera crossed the state line with the intent to harm Aguilar from the history of the relationship, the threatening phone call made one month prior, Utrera's statement to his brother that night, and the fact that Utrera was calling Aguilar derogatory names while she called 911.

Utrera's reliance on the theory that he may have gone to the house in order to harm Figueroa (a person who does not meet the victim standard under the domestic violence statute) does not assist him on appeal. Although a jury could have inferred such a situation from Aguilar's testimony that Figueroa also beat her and that Utrera did not like him, the jury was also free to reject such an inference, as it obviously did. When deciding whether any rational trier of fact could have found the essential elements of the crime, this Court does not "weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002) (quoting *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir.1994)). Because a rational trier of fact could have found that Utrera traveled in interstate commerce with the intent to harm Aguilar, Utrera's insufficient-evidence argument fails.

**E. Sentence**

Utrera challenges the procedural reasonableness of his sentence, contending that the district court failed to consider the factors set forth in 18 U.S.C. § 3553(a). This Court reviews a criminal sentence for reasonableness. *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007).

"A sentence may be procedurally unreasonable if 'the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). To satisfy this procedural requirement the "sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007). The amount of reasoning required varies according to context, and this Court has never required a "ritualistic incantation" of the § 3553(a) factors. *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006). Moreover, "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita*, 127 S. Ct. at 2468.

Here, the district court calculated the applicable Guidelines range, fifty-one to sixty-three months, noting its advisory nature and that the court considered the range to be a reasonable one. *See* 18 U.S.C. § 3553(a)(4). Utrera did not voice any objection to the sentencing range, and does not now own appeal, but stated that the evidence against him was "small." The district court, however, stated that there was not "any doubt" that Utrera attempted to break into Aguilar's apartment and that

there was sufficient evidence to convict him of the offense. The court then went on to address the other relevant § 3553(a) factors. The court noted the nature and circumstances of the offense, *see* 18 U.S.C. § 3553(a)(1): "[T]his was a violent offense . . . and I believe it is a very serious offense that, in view of the violent nature of it, warrants a significant sentence." (JA 145.) The court considered Utrera's criminal history, *see* 18 U.S.C. § 3553(a)(1): "[T]o the extent the defendant is making a motion to suggest that the criminal history category inadequately or inappropriately accounts for his criminal history, I believe that it does. . . . [T]here was a violent offense for which he was convicted. . . . This other offense occurred while he was on probation for that, which accounts for really the primary reason for the offense level III . . . I believe that that fairly represents the criminal history category." (JA 145.) The district court considered the kinds of sentences available, *see* 18 U.S.C. § 3553(a)(3), recommending that Utrera participate in a drug-treatment program and domestic violence counseling. For procedural reasonableness, this is all that we require. *See, e.g.*, *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir.2007) ("[A] sentence is procedurally reasonable if the record demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion."); *accord Rita*, 127 S. Ct. at 2548 (explaining that a sentencing judge must set forth enough to satisfy appellate review and a full opinion is not necessary in every case). We, therefore, reject Utrera's argument.

## V. CONCLUSION

For these reasons, we **AFFIRM** Utrera's conviction and sentence.