RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0181p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES MICHAEL KERNS,

*Defendant-Appellant*.

No. 20-1563

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cr-00032-1—Janet T. Neff, District Judge.

Decided and Filed: August 12, 2021

Before: SUTTON, Chief Judge; COLE and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Timothy VerHey, Kathryn Dalzell, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

COLE, J., delivered the opinion of the court in which SUTTON, C.J., and READLER, J., joined. READLER, J. (pp. 11–17), delivered a separate concurring opinion.

─────────────────

## OPINION

─────────────────

COLE, Circuit Judge. James Michael Kerns pleaded guilty to one count of kidnapping and one count of possession of a firearm in furtherance of a crime of violence. The district court imposed a 192-month sentence. On appeal, Kerns challenges his guilty plea and sentence. For the reasons that follow, we affirm.

I.

On July 24, 2018, a sheriff's deputy observed a vehicle swerving in traffic and initiated a stop. Kerns was operating the vehicle. When the car came to a halt, the passenger, Kerns's prior romantic partner Alissa Colby, exited and yelled that Kerns had kidnapped her at gunpoint. Kerns was immediately arrested. He admitted to driving from Kentucky to Colby's Michigan residence and threatening to kill Colby and her family if she did not leave with him. Colby later explained that she had jerked the wheel of the car to get the attention of the deputy.

Kerns was indicted on three counts: kidnapping (18 U.S.C. § 1201(a)(1)), interstate domestic violence (§ 2261(a)(1)), and possession of a firearm in furtherance of a crime of violence (§ 924(c)(1)(a)(ii)). Kerns requested and obtained a competency and sanity evaluation, which found he suffered from major depressive disorder and borderline personality disorder. He was nonetheless found to have the capacity for criminal responsibility and to be competent to stand trial.

On February 12, 2020, Kerns pleaded guilty before a magistrate judge to kidnapping and possession of a firearm in furtherance of a crime of violence without the benefit of a plea agreement. Kerns confirmed that he understood the nature of the charges and the maximum prison time he could face, that his decision to plead guilty was voluntary, and that he was waiving certain constitutional rights. Both parties agreed that there was a sufficient factual basis to support Kerns's plea. Having found that Kerns's plea was knowing and intelligently made, the magistrate judge recommended that the district judge accept the plea. On February 28, the district judge adopted the magistrate judge's report and recommendation and accepted Kerns's guilty plea.

The district court sentenced Kerns on May 27. At sentencing, Kerns confirmed he had reviewed the presentence-investigation report and had no objection to its findings. The court explained that the recommended sentencing range for the kidnapping count was 87 to 108 months' imprisonment and that the firearm count under § 924(c) carried a mandatory minimum sentence of 84 months' imprisonment, to be served consecutively. Kerns's counsel asked for lenience in sentencing based on his substantial mental-health history. The court ultimately

sentenced Kerns to 108 months' imprisonment on the kidnapping count, the top of the Guidelines range, in addition to a consecutive mandatory minimum sentence of 84 months' imprisonment on the firearm count.  The court recommended mental-health treatment in light of the issues raised by Kerns's counsel.

The court also indicated that Kerns and his counsel had reviewed and signed an order noting additional sentencing conditions prior to sentencing.  This signed order noted, among other things, that Kerns "must pay a below advisory guideline fine of $1,000.00 on Counts One and Three, for a total of $2,000.00."  (Order, R. 79, PageID 293.)  The court summarized this order from the bench, noting that "[t]he additional conditions include a fine of $1,000 on which interest is waived."  (Sent'g Hr'g Tr., R. 86, PageID 338.)

Neither party raised any objections to Kerns's sentence.  This appeal timely followed.

II.

A.  SENTENCING INCONSISTENCY

Kerns first contends that an inconsistency exists between the court's oral reference to a fine of $1,000 and its imposition of a total fine of $2,000.  Kerns asserts "that when an oral sentence conflicts with the written sentence, the oral sentence controls." *United States v. Schultz*, 855 F.2d 1217, 1225 (6th Cir. 1988).  But there was no genuine ambiguity as to the total fine Kerns would be required to pay.  Prior to sentencing, Kerns and his counsel reviewed and signed additional sentencing conditions that provided he would pay a fine of $1,000 per count for a total of $2,000.  When considered in context, the court's failure to specify that the $1,000 fine applied to each count could not have reasonably misled Kerns.

B.  PROCEDURAL AND SUBSTANTIVE REASONABLENESS

Next, Kerns purports to challenge both the procedural and substantive reasonableness of his sentence, but his arguments implicate only substantive reasonableness.  Procedural reasonableness challenges, unlike substantive ones, focus on whether the district court "fail[ed] to calculate (or improperly calculate[ed]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly

erroneous facts, or fail[ed] to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006). Kerns does not identify any procedural error in the district court's sentencing decision. Nor could he. The court calculated Kerns's sentencing range correctly, consulted the 15 U.S.C. § 3553(a) factors in ordering a 192-month sentence, and carefully explained its reasoning. To succeed in challenging his sentence, Kerns's arguments must thus go to his sentence's substantive reasonableness.

The district court's sentencing decision is reviewed for abuse of discretion. *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011). A sentence is assessed for substantive reasonableness by asking whether it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Solano-Rosales*, 781 F.3d 345, 356 (6th Cir. 2015) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). Our review is "highly deferential" though not "without limit." *United States v. Boucher*, 937 F.3d 702, 707–08 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).

Kerns argues that the district court failed to give sufficient weight to his mental-health history in weighing the § 3553(a) factors, and consequently his sentence was greater than necessary. First, Kerns's sentence fell within his Guidelines range and therefore is presumptively reasonable. *Boucher*, 937 F.3d at 707. Second, the court considered Kerns's significant mental-health issues but concluded that the seriousness of his offense, which was supported by a victim-impact statement, deterrence, and the need to protect the public favored a sentence at the top of the Guidelines range. At the same time, the court rejected the government's request for an above-the-Guidelines sentence as "greater than necessary to comply with the statute[.]" (Sent'g Hr'g Tr., R. 86, PageID 337.) A district court does not commit reversible error when it simply assigns more weight to certain § 3553(a) factors than others and arrives at a presumptively reasonable sentence. *United States v. Robinson*, 892 F.3d 209, 214 (6th Cir. 2018) ("[A] district court does not commit reversible error simply by 'attach[ing] great weight' to a few factors." (quoting *Gall*, 552 U.S. at 57)). Kerns's sentence was not substantively unreasonable.

C.  VALIDITY OF THE GUILTY PLEA

Kerns also challenges the validity of his guilty plea.  First, he argues that his guilty plea to the kidnapping charge was invalid because the court improperly advised him of its elements. He also argues that the district court failed to determine a factual basis for his plea to both the kidnapping and firearm charges.

Because Kerns did not object contemporaneously to these purported errors, we apply plain-error review.  *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007). To prevail, Kerns must show that the district court committed an "(1) error, (2) that is plain, and (3) that affects substantial rights," and if those elements exist, we may grant relief for the error "if (4) the error seriously affects the fairness, integrity, or reputation of judicial proceedings." *Id.* at 757–58.  An error affects a defendant's substantial rights if there is a "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).

### 1.  *Violation of Rule 11(b)(1)(G)*

Kerns's argument that he was improperly advised of the elements of the kidnapping offense implicates Federal Rule of Criminal Procedure 11(b)(1)(G).  Under that rule, district courts "must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading" before accepting the defendant's guilty plea.  Fed. R. Crim. P. 11(b)(1)(G).  The "district court must be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense." *Lalonde*, 509 F.3d at 760 (quoting *United States v. McCreary-Redd*, 475 F.3d 722, 723 (6th Cir. 2007)).  "Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  And "[t]he Supreme Court has suggested that providing the defendant with a copy of the indictment prior to his plea of guilty creates a presumption that the defendant was informed of the nature of the charge against him." *Lalonde*, 509 F.3d at 760 (citing *Bousley v. United States*, 523 U.S. 614, 618 (1998)).

Upon carefully reviewing the record, we conclude that the district court properly determined that Kerns understood the elements of kidnapping. The federal kidnapping statute provides, in relevant part, that a person is guilty of kidnapping where he "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person" while traveling in interstate commerce. 18 U.S.C. § 1201(a). Kerns's superseding felony information—which the district court, through the magistrate judge, read verbatim during the plea hearing—parroted these elements, noting that Kerns "unlawfully seized, confined, kidnapped, abducted, or carried away [Colby] and held her for ransom, reward or otherwise, after traveling in interstate commerce[.]" (Supers. Felony Info., R. 53, PageID 139.) Kerns's sole objection is to the fact that later in the plea hearing, the judge commented that if he were to go to trial, the government would have to prove that he "kidnapped [Colby], held her for ransom, and traveled in interstate commerce." (Plea Hr'g Tr., R. 66, PageID 196.) Kerns claims that this caused him to misunderstand the full nature of his charge because the court's comment omitted the statutory language specifying that a defendant can be convicted of kidnapping that is motivated by "ransom *or reward or otherwise*." § 1201(a) (emphasis added).

We are not persuaded. The record reveals that the court fully apprised Kerns of the elements of kidnapping as described in the superseding felony information and that Kerns consulted with his lawyer about the nature of his charges. And the court fully described the elements of § 1201(a) in another portion of the plea hearing. Further, Kerns confirmed at his plea hearing multiple times that he had read the superseding felony information, discussed it with his attorney, and understood the nature of his charges, including the kidnapping charge. We, therefore, cannot conclude that the district court's failure to restate the full language of § 1201(a) caused Kerns to misunderstand the essential elements of the kidnapping offense to which he pleaded guilty. Much less did this omission "seriously affect[] the fairness, integrity, or reputation of [his] judicial proceedings." *See Lalonde*, 509 F.3d at 759–61 (citation omitted) (an "omission alone" of an element of an offense did not demonstrate the defendant lacked awareness of the charges against him). Moreover, Kerns has not presented any plausible argument that, but for the court's alleged failure to inform him of the motive element in one portion of his plea hearing, he would have not entered the plea. *See United States v. Hobbs*, 953 F.3d 853, 857–58 (6th Cir. 2020). In fact, omitting the "otherwise" language from § 1201(a)

suggested to Kerns that the government had a more onerous burden that it did in reality, and yet he pleaded guilty nonetheless.  He thus fails to show that the error affected his substantial rights.

### 2.  *Violation of Rule 11(b)(3)*

Under Federal Rule of Criminal Procedure 11(b)(3), district courts "must determine that there is a factual basis for the plea" before entering judgment.  The "purpose of this rule is to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Lalonde*, 509 F.3d at 762 (internal citations and quotations omitted).  Kerns argues that Rule 11(b)(3) was not satisfied with respect to both his kidnapping and firearm charges. We disagree.

Kerns claims that the district court did not establish facts showing that Kerns's kidnapping was motivated by "ransom or reward or otherwise."  We have held that the federal kidnapping statute's "otherwise" clause is satisfied where the government "show[s] that the defendant acted for *any* reason which would in *any* way be of benefit" to the defendant.  *United States v. Small*, 988 F.3d 241, 250 (6th Cir. 2021).  Here, during Kerns's plea hearing, the government detailed at length the evidence it would produce were the case to go to trial, including evidence suggesting that Kerns's actions were motivated by his emotional ties to the victim.  And Kerns agreed that the evidence described was sufficient to support a conviction. Based on these representations, the district court did not plainly err in concluding that his actions provided a sufficient factual basis to support the kidnapping charge.  *Lalonde*, 509 F.3d at 762 (noting "even a summary of the charges in the indictment and an admission by the defendant" may be "sufficient to establish a factual basis" (internal quotations omitted)).

Kerns also claims the district court did not confirm there was a factual basis for his guilty plea to possession of a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii).  Section 924(c)(1)(A)(i) provides that any person who possesses a firearm in furtherance of a crime of violence is subject to a mandatory-minimum sentence of 60 months' imprisonment.  But if the firearm is "brandished," the mandatory-minimum sentence increases to 84 months' imprisonment.  § 924(c)(1)(A)(ii).  Kerns contends that the facts

proffered by the government show only that "he *possessed* a firearm in relation to a crime of violence, not that he *brandished* a firearm." (Appellant Br. at 43.)

This argument contradicts the record. At Kerns's plea hearing, the government noted that it would be able to prove Kerns brandished a firearm because "he had it out and pointed it at [the victim] when he grabbed her off the porch." (Plea Hr'g Tr., R. 66, PageID 205.) Kerns expressly agreed to that factual representation. Therefore, the court correctly determined a factual basis for Kerns's guilty plea to § 924(c)(1)(A)(ii).

Finally, Kerns suggests that his firearm conviction lacks a factual basis because the government failed to set forth facts establishing that he possessed a firearm in furtherance of a "crime of violence." This claim is belied by the record as well. At the plea hearing the court informed Kerns—as did the superseding felony information—that the "crime of violence" furthered by his possession of a firearm was interstate domestic violence under 18 U.S.C. § 2261(a), a charge that the government promised to dismiss in exchange for his plea. Moreover, Kerns confirmed his understanding that the "crime of violence" for purposes of the § 924(c)(1)(A) count was interstate domestic violence. And he agreed that the government's description of the evidence that it would present at trial would be sufficient to support a conviction on that count.

Kerns contends that § 2261(a) does not "automatically" establish a factual basis for the "crime of violence" element of § 924(c)(1)(A) because § 2261(a) has its own "crime of violence" element. (Appellant Br. at 48–49.) True enough. We have summarized the elements of a § 2261(a)(1) claim as follows:

> [T]he Government must show that the defendant: (1) traveled in interstate commerce (2) with the intent to kill, injure, harass, or intimidate (3) a spouse or intimate partner (4) and that, in the course of or as a result of such travel (5) the defendant committed or attempted to commit a crime of violence against that spouse or intimate partner.

*United States v. Utrera*, 259 F. App'x 724, 731 (6th Cir. 2008). But Kerns fails to explain why this embedded "crime of violence" element affects the nature of his guilty plea. Nor does he identify any authority suggesting that the court was required to inform him of the specific "crime of violence" the government believes he committed or attempted to commit under § 2261(a)(1).

In any event, as the government points out in its briefing, Kerns's conduct could constitute felonious assault under Michigan Law, *see* Mich. Comp. Laws § 750.82(1). The elements of felonious assault in Michigan are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999). The facts established at the plea hearing—that Kerns threatened Colby at gunpoint and forced her into a nearby car—would support a conviction under this statute and, thus, be a "crime of violence" under § 2261(a). Even if we concluded that the court should have informed Kerns that felonious assault could serve as a "crime of violence" for purposes of § 2261(a), Kerns has not pointed to any record evidence suggesting that he would have not entered his guilty plea to § 924(c)(1)(A) had he been supplied with this information. *See Dominguez Benitez*, 542 U.S. at 76.

While the government devotes much briefing to the issue of whether § 2261(a) can as a matter of law serve as a predicate "crime of violence" for Kerns's violation of § 924(c)(1)(A), Kerns fails to articulate an argument on this issue. We therefore decline to address it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quotations omitted)).

D. VAGUENESS

Kerns argues that the term "or otherwise" in the federal kidnapping statute, 18 U.S.C. § 1201, is unconstitutionally vague. "The void-for-vagueness doctrine requires that [a] statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Farah*, 766 F.3d 599, 614 (6th Cir. 2014) (quotations omitted).

Kerns's argument lacks merit. Section 1201 criminalizes kidnapping committed in interstate commerce where the victim is held "for ransom or reward or otherwise." 18 U.S.C. § 1201(a). The Supreme Court has explained that "or otherwise" encompasses any benefit which a captor might attempt to obtain for himself. *Gooch v. United States*, 297 U.S. 124, 128 (1936); *see also United States v. Healy*, 376 U.S. 75, 82 (1964) (explaining that § 1201

was concerned not with the "ultimate purpose sought to be furthered by a kidnaping" but with the "undesirability of the act of kidnaping itself"); *Small*, 988 F.3d at 250.  Given the expansive reach of the term "otherwise," we conclude that Kerns was given sufficient notice that his conduct—which included driving from Kentucky to Michigan to seize Colby against her will at gunpoint—was prohibited under § 1201.  Indeed, we have rejected Kerns's exact argument once before.  *See Daulton v. United States*, 474 F.2d 1248, 1248–49 (6th Cir. 1973) (per curiam) ("The obvious purpose of Sec. 1201 is too plain to warrant the assertion that any person of ordinary intelligence would fail to understand what conduct it forbids.").

Finally, Kerns appears to challenge his firearm conviction on the grounds that its predicate crime of violence (Kerns's since-dropped Count 2 for § 2261 interstate domestic violence, *see supra*) itself contains a "crime of violence" element that is unconstitutionally vague.  Kerns is correct that the Supreme Court has invalidated one of the statutory definitions of "crime of violence" as unconstitutionally vague, namely 18 U.S.C. § 16(b)'s "residual clause" definition of the term.  *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223, 1234 (2018).  But Kerns fails to explain how the unconstitutional vagueness of § 16(b)'s residual clause affects the validity of his sentence.  His predicate act of assaulting Colby with a firearm falls comfortably within the still-valid definition of crime of violence in § 16(a), that is, "an offense that has as an element the use, attempted use, or threatened use of physical force" against another.  18 U.S.C. § 16(a).

III.

For the foregoing reasons, we affirm the district court's conviction and sentence.

———————

**CONCURRENCE**

———————

CHAD A. READLER, Circuit Judge, concurring. James Kerns was charged with violating the federal kidnapping statute. That statute, once again, prohibits one, while traveling in interstate or foreign commerce, from "kidnap[ping] . . . and "hold[ing] for ransom or reward or otherwise any person . . . ." 18 U.S.C § 1201(a)(1). Characterizing the statute's use of the term "otherwise" as "simply too vague and open to interpretation," Kerns contends that the statute is void for vagueness. *See* Appellant's Br. at 39. Especially as Kerns raises this argument for the first time on appeal, which dramatically lowers his chances of success, I agree that the argument fails. *Puckett v. United States*, 556 U.S. 129, 135 (2009). But the statute's deployment of the term "otherwise" does raise a fair question as to what conduct Congress in fact criminalized. The Supreme Court answered that question many years ago, at least in part. *See Gooch v. United States*, 297 U.S. 124 (1936). But its manner of doing so may well have failed the test of time. For the decision employed now-disfavored atextual interpretive methods, and in the process dramatically expanded the reach of federal criminal jurisdiction, leaving separation-of-powers and federalism concerns in its wake.

A bit of history helps frame today's issue. At common law, kidnapping entailed an obscure form of false imprisonment—abducting and sending one into another country to avoid the initial country's jurisdiction. *See* 4 William Blackstone, *Commentaries* *219; *see also* Model Penal Code § 212.1 cmt. 210 (1980) (describing common-law kidnapping as a "relatively unknown and inconsequential offense"). Originally, kidnapping was a misdemeanor offense. But as states began to enact kidnapping statutes, many states made it a felony to engage in false imprisonment when the perpetrator had a particularly nefarious motive, such as holding the victim for ransom or using the victim as a hostage. 2 Wharton's Criminal Law § 207 (15th ed. 2020).

The federal government, on the other hand, went many years without enacting a federal kidnapping statute. That changed in 1932 with the passage of what was then-called the "Federal

Kidnaping Act." *See* Pub. L. No. 72-189, 47 Stat. 326 (1932). (Congress amended Title 18 in 1994 so that the statute is now called the "Federal Kidnapping Act," the name I will use here. *See* Pub. L. No. 103-322, § 330021, 108 Stat. 1796, 2150 (1994)). The Act was seemingly inspired by the well-published abduction for ransom and murder of aviator Charles Lindbergh's infant son. *See* Robert C. Finley, *Lindbergh Law*, 28 Geo. L.J. 908, 910 (1940). Enactment of the so-called "Lindbergh Law" followed extensive debates in Congress over the risks of federalizing kidnapping law. *See id.* at 910–12. As enacted, the law prohibited the kidnapping and holding of a person for "ransom or reward" while transporting that person in interstate or foreign commerce. *See* 47 Stat. 326. Two years later, amidst a flurry of legislative enactments pursued by President Franklin Roosevelt's Justice Department, *see* Homer Cummings, *Progress Toward a Modern Administration of Criminal Justice in United States*, 22 A.B.A. J. 345, 346 (1936), Congress amended the Act. *See* Pub. L. No. 73-232, 48 Stat. 781 (1934). At the time, observers believed Congress's most significant handiwork was redrafting the law to allow for the imposition of the death penalty for certain kidnapping offenses. *See* Horace L. Bomar, Jr., *The Lindbergh Law*, 1 Law & Contemp. Probs. 435, 440 (1934) (discussing the "major" amendments to the Act); *see also* Hugh A. Fisher & Matthew F. McGuire, *Kidnapping and the So-Called Lindbergh Law*, 12 N.Y.U. L. Q. Rev. 646, 655 (1935) (similar); *cf. United States v. Jackson*, 390 U.S. 570, 587 & n.31 (1968) (describing the 1934 legislative debate and noting that—save for a provision allowing for imposition of the death penalty—the statute left the 1932 law "substantially unchanged"). Yet history arguably would prove otherwise.

While perhaps unknown to the Seventy-Third Congress, let alone an ordinary English speaker in 1934, a cosmetic change to the Act—adding the phrase "or otherwise" to the clause containing "ransom or reward"—would prove consequential. Indeed, the Supreme Court would soon seize upon that term to vastly expand the Act's scope. That opportunity came in the case of Arthur Gooch, an Oklahoman convicted under the Federal Kidnapping Act and sentenced to death. *See Gooch*, 297 U.S. at 124 –25. Two years earlier, Gooch and a compatriot were in the midst of a month-long crime spree when two officers encountered them in Texas. *Id.* at 125. To avoid arrest, the pair disarmed the officers, forced them into a car, and proceeded to drive several hours into southern Oklahoma. *Id.* But upon arriving in the Sooner state, Gooch, in an act of mercy, released the two officers largely unharmed. *Id.*

Challenging his conviction, Gooch argued that the Act's use of the phrase "or otherwise" should be interpreted to imply some sort of pecuniary benefit, making his motive for the kidnapping—to prevent his arrest—insufficient to violate the Act. *Id.* A unanimous Supreme Court disagreed. Two considerations informed that conclusion. One was Congress's purported purpose in amending the Act, which the Supreme Court described as "enlarg[ing] the earlier" statute's reach. *Id.* at 126. Another was the statute's legislative history, which in significant part parroted the Department of Justice's views that federal jurisdiction should generally extend to kidnappings done "not only for reward, but for any other reason." *Id.* at 127–28 & n.1 (quoting S. Rep. 73-534 (1934) and H.R. Rep. 73-1457 (1934)). Embracing this purpose-based approach, *Gooch* concluded that "[h]olding an officer to prevent the captor's arrest" is an act done to "benefit . . . the transgressor," meaning Gooch's conduct fell "within the broad term, 'otherwise.'" *Id.* at 128.

Judged by modern interpretative orthodoxy, *Gooch*'s sins were many. Chief among them, the Supreme Court elevated purpose and legislative history over reliance on the statute's text. The Supreme Court charted that perilous course first by promoting the views of the Justice Department (documented in a House and Senate report) to the status of law. *See id.* at 128 n.1 (describing a Senate report that consisted almost entirely of a memorandum from the Department of Justice). *Gooch* in turn utilized that legislative history to divine a grand purpose to the 1934 amendments, *id.* at 126, even though legislation, we now rightly acknowledge, is the "art of compromise," with "no statute yet known pursu[ing] its stated purpose at all costs." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (cleaned up). *Gooch* then elevated the statute's supposed purpose at the expense of the contemporary, ordinary meaning of the phrase "or otherwise." *See Gooch*, 297 U.S. at 128. In 1934 (as today), the phrase was well understood in a "restrictive sense" to "refer[] to such matters as are kindred to the classes before mentioned." *See* 6 *Judicial and Statutory Definitions of Words and Phrases* 5105 (1904); *see also Walker v. Jack*, 88 F. 576, 581 (6th Cir. 1898) (Taft, J.) (interpreting "or otherwise" to mean "in a manner similar" to the preceding language in the statute). That understanding, moreover, aligned with the familiar canon of statutory construction that general terms that follow specific ones are limited to "matters similar to those specified." *United States v. Aguilar*, 515 U.S. 593, 615 (1995) (Scalia, J., concurring in part and dissenting in part) (discussing the

*ejusdem generis* canon); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012) (observing that when a list of specific words is followed by the catchall phrase "other," *ejusdem generis* "implies the addition of similar after the word other"). Employing this canon, the use of the phrase "or otherwise" following "ransom or reward" customarily would indicate that the Act criminalizes kidnapping done with a motive akin to a ransom or reward—that is, a pecuniary motive. Yet *Gooch* read "or otherwise" to mean "any other reason," rendering the listed motives of ransom or reward entirely superfluous, violating yet another settled rule of statutory interpretation. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (recognizing the "basic interpretive canon[]" that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (citation omitted)).

Over time, *Gooch*'s disregard for the Act's text has led the lower courts to find a "wide variety of purposes" to be encompassed by the "or otherwise" phrase. 3 Wayne R. LaFave, *Substantive Criminal Law* § 18.2(a) (3d ed. 2020) (surveying circuit case law); *see, e.g.*, *United States v. Vickers*, 578 F.2d 1057, 1058 (5th Cir. 1978) (per curiam) (holding that a defendant who drove his estranged wife against her will to "discuss their marital affairs" violated the Federal Kidnapping Act); *United States v. Cavallaro*, 553 F.2d 300, 302 (2d Cir. 1977) (holding that a defendant who forced a woman into his car and tried to extract information from her satisfied the Federal Kidnapping Act's motive clause); *Brooks v. United States*, 199 F.2d 336, 336 (4th Cir. 1952) (holding that members of the Ku Klux Klan who seized a couple to tell them to "stop living together and making liquor" and to instead "attend church" violated the Federal Kidnapping Act). We too have been swept up in that interpretive tidal wave, extending the Act to encompass kidnappings done for the purpose of assaulting another individual, *see United States v. Sensmeier*, 2 F. App'x 473, 476 (6th Cir. 2001); *see also United States v. Ingram*, 846 F. App'x 374, 382 (6th Cir. 2021), or to execute a robbery more effectively, *United States v. Small*, 988 F.3d 241, 250 (6th Cir. 2021), among other reasons. Despite the limiting fashion in which its text would otherwise be understood today, federal courts functionally amended the Act to have "little or no realistic analysis of the motives involved." Finley, *supra*, at 914.

Allowing federal courts to expand Congress's work in such sweeping fashion pays little heed to the principle of the separation of powers, a founding cornerstone of our system of government. *Mistretta v. United States*, 488 U.S. 361, 380 (1989) ("[T]he central judgment of the Framers of the Constitution [is] that, within our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty."). After all, as every middle school American history student understands, the legislative branch, not the judiciary, is tasked with writing the laws that govern us. *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) ("Congress alone has the . . . constitutional authority to revise statutes . . . .  Until it exercises that power, the people may rely on the original meaning of the written law."); *Henson*, 137 S. Ct. at 1725 ("[W]hile it is of course our job to apply faithfully the law Congress has written, it is never our job to rewrite a constitutionally valid statutory text . . . .").

*Gooch* similarly disregarded federalism principles, another bedrock of our federal system. *See Gregory v. Ashcroft*, 501 U.S. 452, 457–59 (1991) (recognizing the "system of dual sovereignty between the States and the Federal Government" as critical to check "abuses of government power" and to secure the "promise of liberty").  *Gooch*'s dubious interpretive methods functionally created a federal false imprisonment statute.  By all accounts, the only remaining distinction between the Federal Kidnapping Act and the broadest state laws criminalizing kidnapping is the federal jurisdictional hook.  And that "hook," it bears noting, has "substantially expanded" in recent years and, as merely a basis for jurisdiction, can be satisfied without "any proof" the defendant knew his crime implicated interstate commerce.  *See* LaFave, *supra* § 18.2(a); *see also United States v. Burnette*, 170 F.3d 567, 571 (6th Cir. 1999) (recognizing that after amendments to the Federal Kidnapping Act in 1972, "knowledge of interstate transportation" is no longer "an element of the offense" and "interstate transportation now serves merely as a jurisdictional basis for federal prosecution of kidnapping"); *see generally Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) (noting that jurisdictional elements are not subject to the presumption in favor of scienter).  The result is expanding federal criminalization, here and elsewhere, which, more often than not, leaves state and local law enforcement at the behest of their federal counterparts. *See* Stephen F. Smith, *Federalization's Folly*, 56 San Diego L. Rev. 31, 55–64 (2019) (discussing how the federalization of criminal law "interferes with the

effective functioning of the state [criminal legal] system"); *see also* Brief of Senator Orrin Hatch as Amicus Curiae in Support of Petitioner at 28, Gamble v. United States, 139 S. Ct. 1960 (2018) (No. 17-646), 2018 WL 4358114 (observing that the "expansion of federal criminal law has come at the expense of states' traditionally exclusive jurisdictions," eroding states' ability to "punish behavior falling within [overlapping] areas of interest").

For better or worse, the expansion of federal criminal jurisdiction has many fathers. Congress, to be sure, has driven much of that evolution. *See, e.g.*, John G. Malcolm, *Criminal Justice Reform at the Crossroads*, 20 Tex. Rev. L. & Pol. 249, 278–81 (2016); Robert Alt, *You Might Be Committing a Federal Crime*, Heritage Found. (Dec. 17, 2010), https://perma.cc/WT9S-8WPT; Alex Kozinski & Misha Tseytlin, *You're (Probably) a Federal Criminal*, in *In the Name of Justice* 43–45 (Timothy Lynch ed., 2009). But those of us in the federal judiciary should be careful about casting too many stones in Congress's direction. After all, at least some of the blame lies at the doorstep of the glass house we occupy. In cases like *Gooch*, we have "perform[ed] Congress's" job by "defin[ing] a crime and ordain[ing] its punishment.'" *United States v. Bond*, 572 U.S. 844, 867 (2014) (Scalia, J., concurring in judgment) (quoting *United States v. Wiltberger*, 5 Wheat. 76, 95 (1820)). Doing so threatens individual liberty, a virtue that "is always at stake when one or more of the branches seek to transgress the separation of powers." *Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J, concurring). Arthur Gooch understood these concerns better than most: he died at the gallows three months after his conviction was affirmed, suffering the ignominious fate of being the first person executed under the statute (and the only one for where the crime did not result in someone's death). *See* Leslie Tara Jones, Arthur Gooch: The Political, Economic, and Social Influences that Led Him to the Gallows (2010) (M.A. dissertation, University of Central Oklahoma), https://perma.cc/B4RL-VP7X.

Despite the many flaws in our modern kidnapping jurisprudence, however, vagueness seemingly is not one of them. Back to today's case, where Kerns argues that the term "otherwise" is too vague to allow him to enter a knowing and voluntary guilty plea. *See* Appellant's Br. at 41. Yet *Gooch* effectively forecloses such an argument. A law violates the "constitutional requirement of definiteness" where it fails to provide a "person of ordinary

intelligence fair notice" of what conduct is forbidden by the statute. *See United States v. Harriss*, 347 U.S. 612, 617 (1954). *Gooch*, however, concluded that it was "obvious" what Congress's amendment to the Federal Kidnapping Act criminalized: *any* act of kidnapping, so long as that act provided some sort of "benefit to the transgressor." 297 U.S. at 128; *see also Wainwright v. Stone*, 414 U.S. 21, 22 (1973) (observing that the "judgment of federal courts as to the vagueness" of a statute "must be made in light" of prior judicial constructions of the statute). In other words, after *Gooch*, there was no doubt as to the import of the "or otherwise" phrase in the Act. *Gooch* merely obviated the Act's motive element—something the government typically need not prove as part of a criminal offense, *see* 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.3(a) (3d ed. 2020)—leaving in its place a federal criminal law largely indistinguishable from any state false imprisonment law. The mere fact that a law that is "marked by . . . reasonable breadth, rather than meticulous specificity," does not make it unconstitutionally vague. *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (citations omitted). Accordingly, we (and other circuits too) have rejected challenges similar to Kerns's, albeit sometimes on somewhat imprecise grounds. *See Daulton v. United States*, 474 F.2d 1248, 1249 (6th Cir. 1973) (per curiam) (rejecting a vagueness challenge on standing grounds and noting in dicta the purpose of § 1201 is "too plain to warrant the assertion that any person of ordinary intelligence would fail to understand what conduct it forbids"); *see also United States v. Walker*, 137 F.3d 1217, 1219 (10th Cir. 1998) (noting that at least five circuits have rejected vagueness challenges to the "or otherwise" portion of § 1201).

True, a law can also be considered unconstitutionally vague where its definitiveness is so insufficient that it "encourage[s] arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Johnson v. United States*, 576 U.S. 591, 595 (2015). That said, whether the Federal Kidnapping Act "invite[s] the exercise of arbitrary power" by "allowing prosecutors and courts to make . . . up" when the law is enforced is left largely unexplored by Kerns. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223–24 (2018) (Gorsuch, J., concurring). It is thus best left for another day to resolve whether the Act's "otherwise" clause raises such constitutional concerns and, more broadly, whether *Gooch*'s errors can be corrected.

Accordingly, I concur in full in the majority opinion.